In re the Termination of Parental Rights to
Diana P., Channa P., Rattanck P., Dara P.,
Rothana P., Daer P., and Ericka P.,
Persons Under the Age of 18:

Dane County Department of Human Services,
Petitioner-Respondent,

v.

Ponn P., Respondent-Appellant-Petitioner.

Supreme Court

*Nos. 03–2440 through 03–2446. Oral argument
September 9, 2004.—Decided March 23, 2005.*

2005 WI 32

(Also reported in 694 N.W.2d 344.)

172

For the respondent-appellant-petitioner there were briefs by *Timothy A. Provis,* Madison, and oral argument by *Timothy A. Provis.*

For the petitioner-respondent there was a brief and oral argument by *Maureen A. Plunkett,* assistant corporation counsel.

An amicus curiae brief was filed by *Scott Horne,* LaCrosse, on behalf of the Wisconsin District Attorney's Association; *E. Michael McCann,* Milwaukee, on behalf of the Milwaukee County District Attorney's Office; and *Elisabeth Mueller,* Wauwatosa, on behalf of the Milwaukee County District Attorney's Office.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. Because we conclude that P.P.'s parental rights were terminated by use of a statutory scheme that requires a showing of unfitness before termination of parental rights can occur, that such a showing was made and that P.P. did not contest the validity of the order that formed the basis for the State's petition, we affirm the decision of the court of appeals.

### I. BACKGROUND

¶ 2. This case arises out of a petition by Dane County Department of Human Services (DCDHS) to

terminate the parental rights of P.P. to seven minor children, Ericka P., Diana P., Channa P., Rattanck P., Dara P., Rothana P., and Dera P. (collectively "the children"), and an order for termination, the Honorable Daniel R. Moeser, presiding.[1] The children currently range in age from 17 to 6.

¶ 3.   County human services agencies first became involved with the family in 1988, based on allegations of physical abuse of the children in Rock County. In 1990, Rock County took custody of the children and placed them in foster care. Visitation was suspended in October 1991, and P.P. did not have any contact with his children between October 1991 and October 1992. The children were later returned to their parents' home, against the recommendation of Rock County Human Services.

¶ 4.   The family moved to Madison in February 1994. DCDHS became involved in April 1994. In March 2001, one of the children disclosed that P.P. had sexually assaulted her. DCDHS subsequently substantiated reports that P.P. had sexually abused one of the children and that both parents had physically abused and neglected all of the children. P.P. was arrested, and the children were placed in foster care on March 21, 2001.

¶ 5.   The children were determined to be in need of protection or services (CHIPS) on July 18, 2001. On August 12, 2002, DCDHS filed a petition for termination of parental rights. The petition alleged that grounds existed for involuntary termination of P.P.'s parental rights under Wis. Stat. § 48.415(1), (2) and (6)

---

[1] The mother's parental rights have been terminated, and she is not a party to this review.

(2001–02)[2] based on abandonment, continuing need of protection or services, and failure to assume parental responsibility, respectively.

¶ 6. In the meantime, P.P. pled guilty to felony child abuse and was in prison until November 12, 2002. Upon release, he lived in a halfway house for about three months, and then he was taken into custody by federal immigration authorities.

¶ 7. On March 4, 2003, DCDHS filed an amendment to its petition for termination of parental rights, restating the ground for involuntary termination stated in Wis. Stat. § 48.415(2), "Continuing need of protection or services," and adding § 48.415(4), "Continuing denial of periods of physical placement or visitation." Regarding the latter ground, DCDHS made two allegations. First, it alleged that P.P. was denied visitation with the children, pursuant to a February 27, 2002 Dane County Circuit Court order that contained the notice required by Wis. Stat. § 48.356(2). Second, DCDHS alleged, "As of February 28, [2]003, at least one year elapsed since the order denying visitation. The court has not subsequently modified its order so as to permit visitation."

¶ 8. On April 16, 2003, P.P. denied the allegations and requested a jury trial. However, on June 2, 2003, P.P. entered a no contest plea to the DCDHS allegations establishing grounds for termination of parental rights under Wis. Stat. § 48.415(4) and waived his right to a trial. P.P. stipulated that there was a factual basis for his plea. The court accepted his plea and stated that it would place in the record the earlier court orders and their underlying factual findings denying visitation. They would provide a factual basis for the ground pled

---

[2] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

to by P.P. Only one order, the one signed October 31, 2002 from an August 12, 2002 hearing, is found in the record with P.P.'s signed no contest plea and waiver statement.

¶ 9. The October 31, 2002 order, which revised and extended a prior dispositional order, required that the parents have no contact, either direct or indirect, with the children and denied the parents visitation. It set out in detail the conditions in P.P.'s home that required no contact by the parents. For example, it explained that the children had been removed from their parents' home because "[r]eports of physical and sexual abuse of the children by both parents" had been substantiated and reports of "severe neglect of the children by both parents" had also been substantiated. The order that formed the factual basis for the plea to Wis. Stat. § 48.415(4) also established that "[n]o known services could ensure the safety of the children in the parental home."

¶ 10. The October 31, 2002 order also established that the following conditions had to be met before the parents could be granted visitation:

A. Each parent must participate in individual therapy until such time that the children's therapists, in consultation with the parent's therapists, believe[] that the children can be physically and emotionally safe with the parent in any setting for visitation;

B. Each parent must demonstrate a 3 month period of sobriety, as determined by the Court, and submit all requested samples for urinalysis. Failure to submit a sample for urinalysis shall be considered the same as a test result indicating the presence of controlled substances or alcohol in the parent's urine;

C. Each parent must sign each and every consent for release of information that is requested by the assigned social worker;

D. Each parent must not be incarcerated.

¶ 11. On June 10, 2003, the court held a dispositional hearing to determine whether the parents' parental rights should be terminated. The court heard testimony from a DCDHS social worker, who had prepared a report for the court, and from P.P. The court then adopted the facts and conclusions of the social worker's report, which detailed the following: the parents' mental health and substance abuse issues; the extreme physical abuse, sexual abuse, and neglect of the children; the children's fear of their parents, including their legitimate fear that their father would kill them; the children's desire never to return to their parents' home; the health, emotional and behavioral problems the children continue to experience; the services offered and provided to the parents; and the children's continuing need for foster care placement, despite the intensive provision of services.

¶ 12. The court noted that the children had been subject to "egregious" physical, mental and sexual abuse and that DCDHS had provided services to the parents and despite those services, conditions had not been met to return the children to their parental home. The court also noted that the children had been separated from both parents for the prior 26 or 27 months. The court explained that termination of parental rights was in the best interests of the children, six of whom were likely to be adopted and the eldest of whom would be living safely with a guardian. The court stated that severing the children's relationships with their parents would be beneficial to the children and that the children had strong relationships with caregivers in their current

placements. In addition, the court explained that DCDHS had made reasonable, even extraordinary, efforts to prevent removal. The court found the parents unfit pursuant to Wis. Stat. § 48.424(4) and entered an order terminating parental rights to all the children.

¶ 13. P.P. appealed, and the court of appeals affirmed. P.P. then filed a petition for review, which we granted.

## II. DISCUSSION

### A. Standard of Review

■

¶ 14. Whether a statute is constitutional presents a question of law that we review de novo. *State v. Cole,* 2003 WI 112, ¶ 10, 264 Wis. 2d 520, 665 N.W.2d 328.

### B. Facial Constitutional Challenge

■

¶ 15. P.P. raises a substantive due process challenge[3] to Wis. Stat. § 48.424(4) because that statute provides that a finding under Wis. Stat. § 48.415(4) is sufficient to prove that a parent is unfit. Such a challenge may be raised based on the assertion that the

---

[3] P.P. does not tell us whether he bases his challenge solely on a fundamental liberty interest that is secured by the Due Process Clause of the United States Constitution or whether there is a state constitutional issue involved too. However, he cites only federal law to identify the fundamental liberty interest he claims the State violated. Accordingly, we conclude that the Fourteenth Amendment to the United States Constitution is the foundation for his argument. The Due Process Clause of the Fourteenth Amendment has been held to protect certain unstated fundamental rights, including those relating to parent/child relationships. *See Quilloin v. Walcott,* 434 U.S. 246, 255 (1978) (instructing that it is only when a parent has a substantial relationship with his or her child that he or she has

statute is unconstitutional as applied, *see Monroe County Department of Human Services v. Kelli B.*, 2004 WI 48, ¶ 1, 271 Wis. 2d 51, 678 N.W.2d 831, or that the statute is facially unconstitutional, *see State v. Rachel*, 2002 WI 81, ¶ 1, 254 Wis. 2d 215, 647 N.W.2d 762. Here, P.P. makes a facial challenge, but not an as-applied challenge. He contends that the statute is an invalid rule because it is so sweeping that it may be used to terminate parental rights without a finding of parental unfitness, as is required by *Stanley v. Illinois*, 405 U.S. 645 (1972).

¶ 16.  Generally, a challenged statute is presumed to be constitutional. *Cole*, 264 Wis. 2d 520, ¶ 11; *Lounge Mgmt., Ltd. v. Town of Trenton*, 219 Wis. 2d 13, 20, 580 N.W.2d 156 (1998); *State v. Konrath*, 218 Wis. 2d 290, 302, 577 N.W.2d 601 (1998). This presumption is based on our respect for a co-equal branch of government and is meant to promote due deference to legislative acts. *Cole*, 264 Wis. 2d 520, ¶ 18. "[E]very presumption must be indulged to sustain the law." *Jackson v. Benson*, 218 Wis. 2d 835, 853, 578 N.W.2d 602 (1998); *accord Cole*, 264 Wis. 2d 520, ¶ 11.

¶ 17.  The court must resolve any doubt about the constitutionality of a statute in favor of upholding its constitutionality. *Kelli B.*, 271 Wis. 2d 51, ¶ 16; *Cole*, 264 Wis. 2d 520, ¶ 11. Further, " '[g]iven a choice of reasonable interpretations of a statute, this court must select the construction which results in constitutionality.' " *American Family Mut. Ins. Co. v. Wisconsin Dep't of Revenue*, 222 Wis. 2d 650, 667, 586 N.W.2d 872 (1998)

a fundamental liberty interest in the society and companionship of the child that is protected by the Due Process Clause of the Fourteenth Amendment).

(quoting *State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 526, 261 N.W.2d 434 (1978)).

¶ 18.   A party challenging a statute's constitutionality bears a heavy burden to overcome the presumption of constitutionality. *Dowhower v. West Bend Mut. Ins. Co.,* 2000 WI 73, ¶ 10, 236 Wis. 2d 113, 613 N.W.2d 557. Therefore, it is insufficient for the party challenging the statute to establish either that the statute's constitutionality is doubtful or that the statute is probably unconstitutional. *Cole,* 264 Wis. 2d 520, ¶ 11; *Jackson,* 218 Wis. 2d at 853. Instead, a party challenging a statute's constitutionality must demonstrate that the statute is unconstitutional beyond a reasonable doubt. *Cole,* 264 Wis. 2d 520, ¶ 11; *Jackson,* 218 Wis. 2d at 853; *Konrath,* 218 Wis. 2d at 302. While this language implies the evidentiary burden of proof most commonly used for factual determinations in a criminal case, in this context, the phrase, "beyond a reasonable doubt," establishes the force or conviction with which a court must conclude, as a matter of law, that a statute is unconstitutional before the statute or its application can be set aside. *See Guzman v. St. Francis Hosp., Inc.,* 2001 WI App 21, ¶ 4 n.3, 240 Wis. 2d 559, 623 N.W.2d 776.

C. Substantive Due Process

¶ 19.   P.P.'s constitutional challenge to Wis. Stat. § 48.415(4) is based on substantive due process.[4] The

---

[4] The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides in part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. *See also* Wis. Const. art. 1, §§ 1 and 8.

right to substantive due process addresses "the content of what government may do to people under the guise of the law." *Reginald D. v. State,* 193 Wis. 2d 299, 307, 533 N.W.2d 181 (1995). It protects against governmental action that either "shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty." *State v. Jorgensen,* 2003 WI 105, ¶ 33, 264 Wis. 2d 157, 667 N.W.2d 318 (quotation omitted); *see also State v. Laxton,* 2002 WI 82, ¶ 10 n.8, 254 Wis. 2d 185, 647 N.W.2d 784. The right of substantive due process protects against a state act that is arbitrary, wrong or oppressive, regardless of whether the procedures applied to implement the action were fair. *Kelli B.,* 271 Wis. 2d 51, ¶ 19 (citation omitted).

¶ 20.   The threshold inquiry here is whether P.P. has a fundamental liberty interest at stake. *Id.,* ¶ 20; *see Dowhower,* 236 Wis. 2d 113, ¶ 14. DCDHS does not contest P.P.'s assertion that he has a fundamental liberty interest in parenting his children. Therefore, any statute that impinges on that right must withstand strict scrutiny. *Kelli B.,* 271 Wis. 2d 51, ¶ 24. In order to withstand strict scrutiny, a statute must be narrowly tailored to meet a compelling state interest. *Id.,* ¶ 25. Here, the compelling state interest is to protect children from unfit parents. *Id.* Accordingly, the statutory scheme at issue must be narrowly tailored to advance the State's interest in protecting children from unfit parents. *See id.,* ¶ 17; *Winnebago County Dep't of Soc. Servs. v. Darrell A.,* 194 Wis. 2d 627, 639, 534 N.W.2d 907 (Ct. App. 1995).

¶ 21.   The legislature has explained that this compelling state interest includes a temporal component. For example, in explaining its legislative purposes for

enacting the Children's Code, of which Wis. Stat. § 48.415(4) is a part, the legislature provided that:

> [t]he courts and agencies responsible for child welfare should . . . recognize that instability and impermanence in family relationships are contrary to the welfare of children and should therefore *recognize the importance of eliminating the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their safe return* to the family.

Wis. Stat. § 48.01(1)(a) (emphasis added). The legislature further explained that one of the Children's Code's purposes is "[t]o promote the adoption of children into safe and stable families rather than allowing children to remain in the impermanence of foster . . . care." Wis. Stat. § 48.01(1)(gg).

D. Narrowly Tailored Statutory Scheme

¶ 22.  This case requires us to examine Wis. Stat. § 48.424(4), which provides that a finding under Wis. Stat. § 48.415(4) is sufficient to prove a parent is unfit.[5] Because findings under § 48.415(4) are not possible without significant earlier findings, our examination must focus more broadly than simply on the specifically challenged statutes. Accordingly, we review the underlying statutory scheme, as well.

¶ 23.  We begin where P.P. has, with the requirements of Wis. Stat. § 48.415(4), which provides that a "[continual] denial of periods of physical placement or

---

[5] A parent's fundamental right to the care and society of his or her child may not be terminated absent a finding that the parent is unfit. *Stanley v. Illinois,* 405 U.S. 645, 649 (1972).

visitation" is a ground for terminating parental rights. A finding under § 48.415(4) requires that all of the following must be proved:

> (a) That the parent has been denied periods of physical placement by court order in an action affecting the family or has been denied visitation under an order under s. 48.345, 48.363, 48.365, 938.345, 938.363 or 938.365 containing the notice required by s. 48.356(2) or 938.356(2).

> (b) That at least one year has elapsed since the order denying periods of physical placement or visitation was issued and the court has not subsequently modified its order so as to permit periods of physical placement or visitation.

Wis. Stat. § 48.415(4).

¶ 24. Having explained above that Wis. Stat. § 48.415(4) serves a compelling state interest, we next determine whether § 48.415(4) is narrowly tailored to advance this interest. P.P. asserts that § 48.415(4) violates substantive due process because "it does not require any evidence of parental unfitness." It is his contention that no-contact orders denying physical placement or visitation, such as have been in effect here, are based on the "best interest of the child," pursuant to Wis. Stat. § 48.355(3), rather than on a finding that the parent is unfit. Therefore, he contends that because these orders are the sole basis for a finding that grounds exist for terminating his parental rights pursuant to § 48.415(4), the statute is not narrowly tailored to meet a compelling state interest and violates his substantive due process right.

¶ 25. At oral argument, P.P. also argued that Wis. Stat. § 48.415(4) should require the court to make a

finding as to the reasons a parent failed to have the order modified during the one year, or more, when it has been in effect. However, § 48.415(4) is not facially invalid on this basis because we do not preclude an as-applied substantive due process challenge to the statutory scheme underlying § 48.415(4) so that the reasons for failing to modify the order denying visitation or physical placement may be explored, in a proper case. However, P.P. pled no contest to the ground asserted to terminate his parental rights, and in so doing, he relinquished his right to test the validity of the order that denied him visitation and periods of physical placement with his children. Accordingly, we do not reach the question of whether an as-applied challenge to the validity of a § 48.415(4) order will lie.[6]

¶ 26. Further, in regard to the statutory scheme being narrowly tailored, DCDHS and the amicus curiae argue that there are required steps that must be taken

---

[6] In his brief, P.P. cites *Steven V. v. Kelley H.*, 2004 WI 47, 271 Wis. 2d 1, 678 N.W.2d 856, for the proposition that there is "no defense to § 48.415(4) based on [a] parent's explanation for noncompliance with the order." However, the *Steven V.* decision was grounded in procedural due process rights, not a substantive due process right. *Steven V.*, 271 Wis. 2d 1, ¶¶ 23, 40 n.6. Thus, in *Steven V.*, we were not addressing whether Wis. Stat. § 48.415(4) was narrowly tailored sufficient to satisfy substantive due process in an individual case. *See id.* Here, P.P.'s constitutional challenge is based on substantive due process grounds. Had he chosen to raise a defense to the ground set out in § 48.415(4) in circuit court, he may have put himself in a position to raise an as-applied challenge to § 48.415(4) on a substantive due process basis on appeal. However, he chose to plead no contest to the petition to terminate his parental rights, thereby admitting the ground alleged. However, neither *Steven V.*, nor this decision, forecloses the possibility of an as-applied substantive due process challenge to § 48.415(4) in the future.

before reaching the application of Wis. Stat. § 48.415(4) in a termination of parental rights case and those steps form the foundation for the ultimate finding in subsection (4). They cite the following step-by-step process: (1) there is an initial decision to hold a child in governmental custody; (2) if the child is held in custody, then there must be a factual determination that the child is in need of protection or services before the next step will be reached; (3) if a child is found in need of protection or services, then the decision about whether to place the child outside the parental home is made; (4) if the child is placed outside the home, only after finding that parent–child visitation or physical placement would be harmful to the child may a parent be denied visitation and physical placement; and (5) if an order denying visitation and physical placement is entered, it must contain conditions that when met will permit the parent to request a revision of the order to afford visitation or periods of physical placement. DCDHS and the amicus curiae submit that at each of these steps, findings must be made that reflect on the parent's fitness. We agree that the statutory step-by-step process that underlies § 48.415(4) is sufficient to show that subsection (4) is narrowly tailored to advance the State's compelling interest of protecting children against unfit parents, and to demonstrate this, we outline how this scheme was applied in P.P.'s case.

¶ 27. In the first step, a petition was filed, alleging probable cause to believe that the children were in need of protection or services (CHIPS). It claimed neglect and severe abuse of the children. The children were placed in foster care on March 21, 2001, after P.P.'s arrest for sexually assaulting one of the children.[7]

---

[7] A child may initially be held in governmental custody, which Wis. Stat. § 48.207(1)(c) explains includes foster care,

¶ 28. Because the children were not released after they were initially taken into custody,[8] a hearing was held to find whether the children should remain in custody, based upon whether probable cause existed, sufficient to prove one of the criteria listed in Wis. Stat. § 48.205(1).[9] While not every ground listed at § 48.205(1) necessarily goes to a parent's unfitness, the present case would appear to fit squarely within the criteria listed at § 48.205(1)(a)-(am),[10] requiring that probable cause exists that the child will be subject to injury if not held in governmental custody. There is

only when there is probable cause to believe that one of the criteria enumerated under Wis. Stat. § 48.205(1) exists.

[8] Wisconsin Stat. § 48.205(1) provides that an intake worker determine whether a child may be held based on probable cause to believe that the child is within the court's jurisdiction and probable cause to believe that one of several enumerated grounds exists. These grounds include concerns for the safety of the child.

[9] This hearing must be held within 48 hours of the decision to hold a child, exclusive of Saturdays, Sundays and legal holidays. Wis. Stat. § 48.21(1)(a).

[10] Wisconsin Stat. §§ 48.205(1), 48.205(1)(a), and 48.205(1)(am) state:

(1) A child may be held under s. 48.207(1) . . . if the intake worker determines that there is probable cause to believe the child is within the jurisdiction of the court and:

(a) Probable cause exists to believe that if the child is not held he or she will cause injury to himself or herself or be subject to injury by others.

(am) Probable cause exists to believe that if the child is not held he or she will be subject to injury by others, based on a determination under par. (a) or a finding under 48.21(4) that if another child in the home is not held that child will be subject to injury by others.

nothing in the record to indicate that P.P. contested the determination that his children be placed outside his home for their safety.

¶ 29. P.P.'s children were adjudicated CHIPS on July 18, 2001, which required that a fact-finding hearing have been held under Wis. Stat. § 48.31. Wisconsin Stat. § 48.27 requires that parents be provided notice of the hearing. A CHIPS determination may not be made unless one of the 14 grounds described in Wis. Stat. § 48.13 is found. Each of those grounds defines some type of parental abandonment, abuse, neglect, or inability to care for the child. These allegations have to be proven by clear and convincing evidence. Wis. Stat. § 48.31(1). Again, the record does not indicate that P.P. challenged the factual findings that were made.

¶ 30. P.P.'s children remained in foster care after the CHIPS adjudication, due to a subsequent dispositional hearing held pursuant to Wis. Stat. § 48.335. At the dispositional hearing in a CHIPS case, the court may order that placement of a child be transferred outside the parental home "only when there is no less drastic alternative." Wis. Stat. § 48.355(1). A dispositional order that places a child outside the home must contain a finding that placing the child in the parental home would be "contrary to the welfare of the child" and, unless limited circumstances exist that are not present in this case, a finding that the relevant social service agency made reasonable efforts to prevent the child's removal from the home. Wis. Stat. § 48.355(2)(b)6. In P.P.'s case, the October 31, 2002 revised and extended dispositional order indicated that the children were removed from their parents' home because of physical and sexual abuse by P.P. and severe neglect by both parents. The order also required that the name and address of each child's placement be

withheld from P.P., which may be done only if the court finds that such a disclosure would result "in imminent danger" to the child or foster parents, Wis. Stat. § 48.355(2)(b)2. While Justice Butler's dissent is correct that this finding was made during a hearing where the best interest of the child is the controlling standard, Justice Butler's dissent, ¶ 88, it was also grounded in a lack of fitness on the part of P.P. Here, the finding was based on P.P.'s sexual assault and extreme abuse of his own children. Therefore, this finding supports the ultimate determination that P.P. was an unfit parent. However, once again, the record does not indicate that P.P. contested these determinations.

¶ 31.  Because an out-of-home placement of the children was ordered, the issue of parental visitation arose. Except under enumerated circumstances, a visitation determination may be made only after a hearing with due notice to the parent. Wis. Stat. § 48.355(3). The court has the discretion, based on the best interests of the child, to set reasonable rules regarding parental visitation within the dispositional order. Wis. Stat. § 48.355(3)(a). In the present case, the court denied P.P. visitation with the children, and the court provided conditions that had to be met before visitation could be granted. Under Wis. Stat. § 48.363(1)(a), a parent may request a revision of the dispositional order, which would include a revision of the court-imposed rules regarding visitation. The record does not show that P.P. contested the denial of visitation or the conditions imposed, or that he moved the court to revise these visitation rules.[11]

---

[11] One of the conditions for the resumption of visitation was that P.P. not be incarcerated. Justice Butler's dissent asks, "Will this now become an independent ground to terminate the rights

¶ 32.   Only after all the above described steps took place, was P.P. faced with a fact-finding hearing on whether a ground for terminating his parental rights existed under Wis. Stat. § 48.415(4). The findings that are required for a court to proceed against a parent at each of the steps prior to the final step under § 48.415(4) involve an evaluation of a parent's fitness. It is the cumulative effect of the determinations made at each of the previous steps that causes the finding made under § 48.415(4) to amount to unfitness. Looked at another way, this series of steps acts as a funnel, making smaller and smaller the group of parents whose relationships with their children are affected at each step, until only a very small number of parents would be affected by § 48.415(4). Accordingly, § 48.415(4) cannot be evaluated for a claimed constitutional infirmity in isolation. The full statutory scheme that precedes the implementation of § 48.415(4) must be evaluated as well. Therefore, it is with consideration of this statutory scheme underlying the ground stated in § 48.415(4), that we conclude that on its face § 48.415(4) is narrowly tailored to serve the State's compelling interest of protecting children from unfit parents, including the temporal component in this interest that promotes children's welfare through stability and permanency in their lives. In our view, P.P. has not proved beyond a reasonable doubt that the statu-

of parents convicted of felonies with sentences in excess of a year?" Justice Butler's dissent, ¶ 91 n.8. The grounds for termination are established by the legislature. However, the order requiring that a parent not be incarcerated is set by a court; this same court can modify that order on the motion of a parent. Wis. Stat. § 48.363(1)(a).

tory scheme either shocks the conscience or interferes with a right implicit in the concept of ordered liberty.

¶ 33. Further, the application of Wis. Stat. § 48.415(4) to P.P.'s case demonstrates that there is at least one possible interpretation and application of the statute that is constitutional, as we have described above, in its application to P.P. Accordingly, we have been provided with further evidence that § 48.415(4), on its face, is not unconstitutional beyond a reasonable doubt. *See Cole,* 264 Wis. 2d 520, ¶ 30 (concluding that when there is an application or interpretation of the statute that is constitutional, the statute is not unconstitutional on its face).

¶ 34. P.P. had multiple opportunities to contest the determinations made at each fact-finding stage in the statutory scheme that was employed in advance of the termination of his parental rights. He chose not to contest any of these predicate steps. Instead, he pled no contest to the allegation that Wis. Stat. § 48.415(4) provided a ground for terminating his parental rights. Accordingly, the record supports the conclusion of Wis. Stat. § 48.424(4) that P.P. is an unfit parent.

### III. CONCLUSION

¶ 35. Because we conclude that P.P.'s parental rights were terminated by use of a statutory scheme that does require a showing of unfitness before termination of parental rights can occur, that such a showing was made and that P.P. did not contest the validity of the order that formed the basis for the State's petition, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 36. DAVID T. PROSSER, J. (*concurring*). I substantially agree with the analysis in the majority opinion. I write separately to address the two dissents and to disavow judicial efforts to tamper with the termination of parental rights (TPR) statutes.

## I. BACKGROUND

¶ 37. In his brief, the petitioner states the issue as whether Wis. Stat. § 48.415(4) is unconstitutional on its face "because it does not require any evidence of parental unfitness," and this hypothesis attracts the two dissents. In my view, the hypothesis is mistaken because the statutory scheme is designed to expose and establish parental unfitness.

¶ 38. In Wisconsin, the definition of "unfitness" is not up for interpretation on a case-by-case basis. The legislature has defined unfitness by establishing multiple statutory "grounds" for the termination of parental rights. *See* Wis. Stat. § 48.415. These grounds include abandonment, child abuse, failure to assume parental responsibility, and commission of a serious felony against one of the parent's children. Some of the grounds in the statute, such as child abuse, are self-evident; others require close examination of the requisite elements in the context of the overall statutory scheme.

¶ 39. The termination of P.P.'s parental rights was based on Wis. Stat. § 48.415(4), "Continuing Denial of Periods of Physical Placement or Visitation." The majority opinion carefully explains the basis for this ground and the elements that the government must prove at a fact-finding hearing. The opinion correctly observes that "findings under § 48.415(4) are not possible without significant earlier findings," majority op.,

191

¶ 22, and it recounts the steps leading up to the fact-finding hearing on that ground. *See* Wis. Stat. § 48.424.

¶ 40.    The record in this case illuminates the basic points of government interaction with a parent prior to a termination proceeding. A TPR case usually unfolds in the following manner.

¶ 41.    First, a child is taken into custody under a judicial order made upon a satisfactory showing that "the welfare of the child demands that the child be immediately removed from his or her present custody," Wis. Stat. § 48.19(1)(c), or by a law enforcement officer who "believes on reasonable grounds . . . that [t]he child is suffering from illness or injury or is in immediate danger from his or her surroundings and removal from those surroundings is necessary." Wis. Stat. § 48.19(1)(d)5. The person taking the child into custody "shall immediately attempt to notify the parent," and this effort must be continued by one person or another until the parent is notified. Wis. Stat. § 48.19(2). The parent is told of the reasons for holding the child in custody and informed of the time and place of a detention hearing. Wis. Stat. § 48.20(8). The parent is told of the possible consequences of that hearing and of the right to present and cross-examine witnesses. *Id.* The purpose of notification is to alert the parent to the forthcoming opportunity to review and dispute government action.

¶ 42.    Second, the court conducts a detention hearing for a child in custody. Wis. Stat. § 48.21. This hearing is preceded by a petition that identifies the purpose of the hearing, especially a claim that the child is in need of protection or services. Wis. Stat. § 48.21(3). At the hearing, the court must find probable cause to continue custody on one of the bases listed in Wis. Stat.

192

§ 48.205. Wis. Stat. § 48.21(4). "Reasonable restrictions may be placed upon the conduct of the parent . . . which may be necessary to ensure the safety of the child." Wis. Stat. § 48.21(4)(a). A judicial decision to maintain custody of the child must list the reasons and criteria forming the basis for the decision and a finding "that continued placement of the child in his or her home would be contrary to the welfare of the child." Wis. Stat. § 48.21(5)(a) and (b)1.

¶ 43.   Third, the court eventually holds a more complete fact-finding hearing to determine whether the allegations in the petition—that a child is in need of protection or services—are proved by clear and convincing evidence. Wis. Stat. § 48.31(1). The child's parent may demand a jury for this hearing. Wis. Stat. § 48.31(2).

¶ 44.   Fourth, if the fact-finder determines by clear and convincing evidence at the fact-finding hearing that the child is in need of protection or services, the court then conducts a "dispositional" hearing to determine disposition. Wis. Stat. § 48.335(1). This hearing follows the preparation of a court-ordered report that provides recommendations to the court from an appropriate agency. Wis. Stat. § 48.33. The report must address, in detail, any recommendation that the child be placed outside the home. Wis. Stat. § 48.33(4). At the dispositional hearing, the parent may present evidence to challenge the recommendation and may make alternative recommendations. Wis. Stat. § 48.335(3).

¶ 45.   Fifth, the court makes a disposition. Wis. Stat. § 48.345. If the government shows that the rehabilitation or treatment of the child "cannot be accomplished by means of voluntary consent of the parent," the court may transfer custody of the child to a relative, a county department, or a licensed child welfare agency.

Wis. Stat. § 48.345(4). "When appropriate . . . the family unit shall be preserved and there shall be a policy of transferring custody of a child from the parent . . . only where there is no less drastic alternative." Wis. Stat. § 48.355(1).

¶ 46.   Sixth, a disposition order *shall* include written findings of fact and conclusions of law based on the evidence presented to the court. Wis. Stat. § 48.355(2). If the child is placed outside the home, the court *shall* make a written finding "that continued placement of the child in his or her home would be contrary to the welfare of the child." Wis. Stat. § 48.355(2)(b)6. "The court shall make the findings specified in this subdivision on a case-by-case basis based on circumstances specific to the child and shall document or reference the specific information on which those findings are based in the court order." *Id.*

¶ 47.   Seventh, in most circumstances, the court must make a finding that the government agency responsible for providing services under a court order "has made reasonable efforts to prevent the removal of the child from his or her home, while assuring . . . the child's health and safety," or has made reasonable efforts to achieve the goal of the child's permanency plan. That goal may be to return the child to the home. *Id.;* Wis. Stat. § 48.355(2c).

¶ 48.   Eighth, when a child is placed outside the home, the court *may* deny or limit visitation. Wis. Stat. § 48.355(2c)(b), and § 48.356(1). The basis for this determination must be explained.

¶ 49.   Ninth, the court has a duty to warn the parent of a child placed outside the home of any potential grounds for termination of parental rights under Wis. Stat. § 48.415 "and of the conditions neces-

sary for the child . . . to be returned to the home or for the parent to be granted visitation." Wis. Stat. § 48.356(1).

## II. APPLICATION

¶ 50. In this case, the county settled on "Continuing Denial of Periods of Physical Placement or Visitation" as the ground on which it sought termination of P.P.'s parental rights. Wis. Stat. § 48.415(4).[1] This statute provides that a parent is unfit (1) if the parent has been denied physical placement of the child or visitation with the child by court order; (2) at least one year has elapsed since the court issued the order; and (3) the court has not modified the order so as to permit periods of physical placement or visitation. Wis. Stat. § 48.415(4).

¶ 51. As noted in ¶¶ 41–49, the steps leading up to a petition under § 48.415(4) are elaborate. P.P. does not contend that these steps were not followed in his case. All steps outlined above preceded the petition to terminate P.P.'s parental rights, and all steps would

---

[1] Wisconsin Stat. § 48.415(4) provides:

(4) Continuing Denial of Periods of Physical Placement or Visitation. Continuing denial of periods of physical placement or visitation, which shall be established by proving all of the following:

(a) That the parent has been denied periods of physical placement by court order in an action affecting the family or has been denied visitation under an order under s. 48.345, 48.363, 48.365, 938.345, 938.363 or 938.365 containing the notice required by s. 48.356(2) or 938.356(2).

(b) That at least one year has elapsed since the order denying periods of physical placement or visitation was issued and the court has not subsequently modified its order so as to permit periods of physical placement or visitation.

have preceded a fact-finding hearing on the termination petition under Wis. Stat. § 48.424, if P.P. had not entered a no contest plea and admitted the asserted ground.

¶ 52. It should be obvious that the statutes entitle a parent to notice of virtually every step in the lengthy proceedings. The statutes also afford a parent the right to challenge in court a child's continued custody, a child's placement outside the home, and any restrictions on the parent's visitation. P.P. does not allege that the government failed to inform him of any step in the proceedings, or prevented him from challenging government action at any point. He did not invoke his right to a jury trial when that right was afforded; he failed to ask for reconsideration or modification of any judicial order; and he did not seek judicial review.

¶ 53. If a parent fails to exercise his or her rights to challenge government action, how can the parent complain that an unchallenged court-ordered separation of parent and child for at least a year does not provide evidence of the parent's unfitness? The reasons for the separation are in the record, and the failure to seek a change in circumstances is proof of the parent's unfitness.[2] The parent has no legitimate complaint unless the parent can point to some specific procedural deficiency such as a failure to provide timely notice,

---

[2] Chief Justice Abrahamson's dissent states that this concurrence "infers" a finding of unfitness. Chief Justice Abrahamson's dissent, ¶ 73. This is not correct. In Wis. Stat. § 48.415 the legislature has *explicitly* defined the grounds meriting a finding of unfitness, and the circuit court *explicitly* found P.P. unfit under § 48.415(4) after he pled no contest. Having made a finding in line with the statute, the circuit court had no obligation to make a duplicative finding of unfitness apart from the statute.

some fundamental unfairness in a condition set by the court, or some excusable error, explainable inadvertence, or impossibility in making a timely challenge or in meeting the conditions for placement or visitation. A year is a long time for a fit parent to do nothing.

¶ 54. If a parent has in fact exercised his or her right to challenge one or more of the prior judicial determinations, then the record will show why those efforts did not succeed.

¶ 55. The statutory scheme is replete with procedural safeguards. As the majority opinion explains, a child is entitled to parental involvement and support. The legislature has determined that a parent's unwillingness or inability to be involved with a child, *after* a necessity-based court order to separate the child from the parent, is compelling evidence of the parent's unfitness.

### III. STATUTORY INTERPRETATION

¶ 56. The statutory scheme is sound. What is troublesome are judicial interpretations that (1) deprive a parent of the right to a jury trial in circumstances where a circuit judge determines that no material facts are in dispute; or (2) preclude the parent from ever offering any factual defense at the fact-finding hearing on a § 48.415(4) ground.

¶ 57. The first concern was discussed in my dissent in *Steven V. v. Kelley H.*, 2004 WI 47, ¶¶ 63–100, 271 Wis. 2d 1, 678 N.W.2d 856 (Prosser, J., dissenting). My view was that a parent had the right to a jury trial at the hearing to establish grounds for termination of parental rights, not because the constitution requires it but because the legislature had always made the right to trial by jury in termination cases a fundamental part

of the prescribed procedure. To conclude otherwise, this court disregarded more than a century of statutory law and overruled *Walworth County Department of Human Services v. Elizabeth W.,* 189 Wis. 2d 432, 525 N.W.2d 384 (Ct. App. 1994).

¶ 58. The second concern was also discussed in my *Steven V.* dissent at ¶¶ 93–98. The majority concluded that unfitness determinations could conclusively flow from "certain existing court orders." *Steven V.,* 271 Wis. 2d 1, ¶ 39. The Chief Justice added in her concurrence that the termination court could not consider reasons why the disposition court did not modify an order denying placement or visitation. *Steven V.,* 271 Wis. 2d 1, ¶ 56 (Abrahamson, C.J., concurring).

¶ 59. There appears to be a relationship between summary judgment replacing trial by jury and the court-created barrier to offering a factual defense to a § 48.415(4) ground. It is much easier to deny a jury trial on the basis that no material facts are in dispute when one first concludes that the legislature has insisted that a court may not consider any facts, explanations, or defenses to a § 48.415(4) ground "to defeat the determination of unfitness once [that] ground has been found." *Id.* Of course, I disagree with this interpretation of the legislature's intent.

¶ 60. As I see it, if a parent is able to show a fundamental flaw in the procedure leading up to a termination petition under § 48.415(4), the parent must have an opportunity to bring that flaw to the attention of the termination court before the court or jury makes a finding on this ground for unfitness. If a parent is able to show that it was impossible or completely unreasonable to comply with the court order, the parent must have an opportunity to present that evidence. Failure to provide such an opportunity is not

only unfair but also implicates the parent's due process right to present a defense. *Washington v. Texas,* 388 U.S. 14, 19 (1967); *see also State v. Heft,* 185 Wis. 2d 288, 303, 517 N.W.2d 494 (1994). While it is true that the "strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases," basic due process rights often apply in civil proceedings. *BMW of N. Am. v. Gore,* 517 U.S. 559, 574–75 n.22 (1996) (protection against judgment without notice applies in civil proceedings); *Reed v. Cleveland Bd. of Educ.,* 607 F.2d 749, 750 (6th Cir. 1979). The Supreme Court has also characterized the due process right as "an opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). The fact-finding hearing on unfitness is certainly a "meaningful time."

¶ 61.    The majority apparently recognizes that a parent with a factual defense must be heard in some way because it allows the parent to bring an as-applied constitutional challenge to the statute. Majority op., ¶ 25 n.6. But an as-applied challenge is an inadequate remedy. At the termination proceeding, the county must prove unfitness by clear and convincing evidence. Wis. Stat. § 48.415; *see also Santosky v. Kramer,* 455 U.S. 745, 769–70 (1982). By contrast, in an as-applied constitutional challenge, this court "begin[s] with the presumption that the statute is constitutional and resolve[s] any doubt [in favor] of upholding its constitutionality." *Monroe County Dep't of Human Servs. v. Kelli B.,* 2004 WI 48, ¶ 16, 271 Wis. 2d 51, 678 N.W.2d 831. This shift in the burden of proof is not fair to the parent.[3]

---

[3] In *Monroe County Department of Human Services v. Kelli B.,* 2004 WI 48, ¶ 1, 271 Wis. 2d 51, 678 N.W.2d 831, the court

¶ 62. The court's continued insistence on denying the parent an opportunity to present a factual defense to a § 48.415(4) petition is also bad policy. It is not good practice to invite as-applied constitutional challenges. Writing in another context, Justice Blackmun once criticized the Supreme Court's characterization of an attack on a statute as an "as-applied challenge" because, he said, "the Court risks misdirecting the litigants and the lower courts toward piecemeal litigation continuing indefinitely throughout the life of the [statute]." *Bowen v. Kendrick,* 487 U.S. 589, 627–28 (1988) (Blackmun, J., dissenting). I fear a similar outcome here. This court should not encourage satellite litigation. It could avoid doing so by allowing a parent to present at the termination hearing factual evidence relevant to the parent's prior failure to challenge an order denying placement or visitation rights. This evidence could be tightly screened rather than absolutely excluded.

¶ 63. In addition, reasonable people agree that "persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky,* 455 U.S. at 753–54. The inconvenience—if such it is—of allowing the parent to present evidence why he or she could not

---

held Wis. Stat. § 48.415(7) unconstitutional as applied. Part of my concern in that case was that this court made certain assumptions about the facts, relieving the parent challenging the statute of her burden of proof and disregarding the facts in the record, including the circuit court's findings. Compare the procedure outlined in *State v. Hamdan,* 2003 WI 113, ¶¶ 86–88, 264 Wis. 2d 433, 665 N.W.2d 785.

200

challenge or comply with the court order pales in comparison to this fundamental right.

¶ 64. My interest in writing is to protect parents *and* to sustain the TPR statutes. Interpretations that curtail parental protections can only hurt the statutes in the long run. I therefore respectfully concur.

¶ 65. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). While I join in the majority opinion in all respects, I write separately to explain the use of language that appears to have originated in *United States v. Salerno,* 481 U.S. 739 (1987), and has continued through many of Wisconsin's appellate cases where a constitutional challenge is made on a facial, rather than an as-applied, basis. We have said, "A 'facial' challenge to the constitutionality of a statute means that the 'challenger must establish, beyond a reasonable doubt, that there are no possible applications or interpretations of the statute which would be constitutional.'" *State v. Cole,* 2003 WI 112, ¶ 30, 264 Wis. 2d 520, 665 N.W.2d 328.[1]

¶ 66. A number of Wisconsin appellate opinions have described constitutional challenges that are made on a facial basis in the same way as we did in *Cole. See State v. Radke,* 2002 WI App 146, ¶ 4, 256 Wis. 2d 448, 647 N.W.2d 873; *State v. Wanta,* 224 Wis. 2d 679, 690, 592 N.W.2d 645 (Ct. App. 1999); *State v. Ruesch,* 214 Wis. 2d 548, 556, 571 N.W.2d 898 (Ct. App. 1997). However, some commentators, such as Michael Dorf, have seen the language from *Salerno* as imposing an impossible burden on the challenger, essentially one

---

[1] *State v. Cole,* 2003 WI 112, ¶ 30, 264 Wis. 2d 520, 665 N.W.2d 328, cites *State v. Wanta,* 224 Wis. 2d 679, 690, 592 N.W.2d 645 (Ct. App. 1999), and *Wanta* cites *United States v. Salerno,* 481 U.S. 739, 745 (1987).

that cannot be met. *See* Michael C. Dorf, *Facial Challenges to State and Federal Statutes,* 46 Stan. L. Rev. 235, 236–40 (1994) (questioning whether the United States Supreme Court has consistently applied this standard from *Salerno* and questioning what the Supreme Court actually meant). However, other writers question Dorf's reasoning and analysis of the language from *Salerno. See* Alfred Hill, *Some Realism About Facial Invalidation of Statutes,* 30 Hofstra L. Rev. 647, 677 (2002).

¶ 67. In the context of a facial challenge to the constitutionality of a statute, Wisconsin courts have echoed, or in some cases ignored, the *Salerno* statement, without attempting to explain what the Supreme Court requires by way of analysis when a facial challenge to a statute is made under the provisions of the United States Constitution.[2] However, I conclude that these differing approaches can be reconciled. In that regard, I find persuasive Marc E. Isserles' comparison of the oft-quoted language from *Salerno* with the position of its critics. Marc E. Isserles, *Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement,* 48 Am. U. L. Rev. 359 (1998). Isserles explains that: (1) claiming a statute is unconstitutional in all applications necessarily includes the conclusion that it is unconstitutional as applied to the party before the court; and (2) *Salerno* does not set out a methodology under which a court is precluded from holding that a statute is unconstitutional unless the court determines that every possible statutory application is unconstitutional; rather, *Salerno* is descriptive of a statute that, when examined

---

[2] See *Cole,* 264 Wis. 2d 520, ¶ 30, where *Salerno*-type language is employed, but not explained, and *State v. Hamdan,* 2003 WI 113, ¶¶ 5, 44, 264 Wis. 2d 433, 665 N.W.2d 785, where *Salerno*-type language is not employed and not explained.

under the relevant constitutional doctrines, but independent of particular factual applications, states an invalid rule of law. *Id.* at 398–407. In my view, when *Salerno* is seen as descriptive of the end product of a court's reasoning, rather than as a test that rigidly sets the analysis that must be undertaken, the actual tasks engaged in by a court in a facial challenge are better understood.

¶ 68.   Therefore, the conclusion of the court that P.P. has not satisfied his burden to prove the statute unconstitutional beyond a reasonable doubt, i.e., that it is an invalid rule, is supported in part because P.P. has not shown that as to him the statute is unconstitutionally applied and in part because there is a reasonable construction of the statute as a part of a narrowly tailored statutory scheme that causes it to be a valid rule to protect children from unfit parents.

¶ 69.   Because I believe this explanation of *Salerno*'s oft-quoted language may help future litigants and courts analyze facial constitutional challenges, I have chosen to write separately.

¶ 70. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*).   Hard cases make bad law. This is a hard case because P.P. is a bad actor; he was convicted of child abuse of his children. Chances are high that under the proper procedures he would be found an unfit parent.

¶ 71.   Nevertheless, P.P., like all other parents in termination of parental rights proceedings, is entitled to due process. Due process is afforded to bad guys and good guys. That's our system. When we deviate from the requirements of due process, all parents are harmed.

¶ 72.   Due process requires that before termination of parental rights, a circuit court must find by clear

and convincing evidence that the parent is an unfit parent. In Wisconsin, the legislature requires a court to find a parent unfit on proof of a statutory ground. As I have stated previously, there may be situations when one of the statutory grounds for termination is met, but the facts do not justify a finding of parental unfitness.[1] There's the problem.

¶ 73. The circuit court found the statutory ground was met, but the circuit court did not otherwise explicitly determine P.P. to be an unfit parent.[2] The majority opinion and Justice Prosser's concurring opinion infer such an individualized finding of this parent's unfitness from the "use of a statutory scheme."[3] Thus the majority opinion weakly concludes that "it is the cumulative effect of the determinations made at each of the previous steps that causes the finding under § 48.415(4) *to amount to unfitness.*"[4]

¶ 74. No matter how you slice and dice the statutory scheme used in the present case, nowhere can be found a circuit court's finding of the parent's individualized unfitness, aside from a finding that a statutory ground has been met.

¶ 75. Like Justice Prosser, I too disavow judicial tampering with the TPR statutes[5] in an effort to save them from being unconstitutional. The majority opinion and Justice Prosser's concurring opinion present

---

[1] *Steven V. v. Kelly H.,* 2004 WI 47, ¶ 54, 271 Wis. 2d 1, 678 N.W.2d 856 (Abrahamson, C.J., concurring).

[2] Majority op., ¶ 32; Justice Prosser's concurrence, ¶ 53.

[3] Majority op., ¶¶ 1, 35; Justice Prosser's concurrence, ¶¶ 41–49, 53.

[4] Majority op., ¶ 32 (emphasis added); *see also* Justice Prosser's concurrence, ¶¶ 41–49.

[5] Justice Prosser's concurrence, ¶ 36.

two such examples of tampering. The majority opinion infers unfitness when there has not been an explicit finding of unfitness aside from a finding of a statutory ground. Justice Prosser's concurring opinion would engraft a requirement that parents be allowed to present "evidence relevant to the parent's prior failure to challenge an order denying placement or visitation rights" in order to ensure the constitutionality of the TPR scheme.[6] P.P. was denied this opportunity under the current TPR scheme, and both the majority opinion and Justice Prosser's concurring opinion tinker with the TPR statutes in order to reach a constitutionally required individualized finding of unfitness.

¶ 76. As I explained in my concurrence in *Steven V. v. Kelley H.*, 2004 WI 47, ¶¶ 54–62, 271 Wis. 2d 1, 678 N.W.2d 856, and as the instant case further demonstrates,[7] the legislature should revisit the statutes to ensure the legitimacy and constitutionality of the process for terminating parental rights.[8]

¶ 77. With these comments, I join the dissent of Justice Louis B. Butler, Jr.

¶ 78. I am authorized to state that Justice LOUIS B. BUTLER, JR. joins this dissent.

¶ 79. LOUIS B. BUTLER, JR., J. (*dissenting*). The majority concludes that the record supports a finding that P.P. is an unfit parent. P.P. may actually be an unfit parent, but what he has not had is an individualized judicial determination that he is an unfit parent. Under this statutory scheme, not only is such a deter-

---

[6] Justice Prosser's concurrence, ¶ 62.

[7] *See, e.g.*, majority op., ¶ 25 n.6, indicating other challenges to § 48.415(4) a parent may bring in the future.

[8] *See* Wis. Stat. § 13.83(1), 13.93(2)(d).

mination unnecessary, P.P. is now precluded from having a determination on that very issue. While this state has a compelling interest to protect children from unfit parents, Wis. Stat. § 48.415(4) is not narrowly tailored to achieve that interest. Accordingly, I dissent.

## I

¶ 80.   On August 12, the County filed a petition to terminate P.P.'s parental rights, alleging abandonment, *see* Wis. Stat. § 48.415(1), the children were in continuing need of protection or services, *see* § 48.415(2), and failure to assume parental responsibility, *see* § 48.415(6). P.P. first appeared in court on September 6, 2002, for an initial hearing on the TPR petition, but because he does not speak or understand English, and because an interpreter did not appear, the court continued the hearing for cause. P.P. did not attend the continued initial hearing on October 2, given his incarceration in Dodge County[1] and a failure to provide sufficient time to arrange for him to appear by telephone. The court again continued the hearing for cause.

¶ 81.   On October 29, P.P. appeared by telephone with an interpreter. P.P. indicated he wanted counsel, and although P.P. qualified for public defender representation, he had yet to be appointed counsel due to the non-availability of private bar attorneys in the county who accepted TPR appointment cases. The court yet again adjourned the cases for cause until December 11. Meanwhile, P.P. was released from his incarceration on November 12.

---

[1] P.P.'s incarceration for felony child abuse may have affected the decisions on how to proceed below.

¶ 82. At the December 11 plea hearing, P.P. appeared by counsel,[2] contested the petition's allegations, and requested a jury trial. The court set a trial date for February 13 and 14, 2003.

¶ 83. On January 27, 2003, however, the County motioned the court to continue the trial date to February 25, asserting:

> It is in the interests of judicial economy to set an adjourned date for trial on the basis that trial would be greatly truncated after February 27, 2003. On February 27, 2003, one year will have elapsed since the court issued a denial of visitation for each parent which has not subsequently been modified to permit visitation. Such an occurrence will establish an additional ground for termination of parental rights to be pled. Proof to establish the ground of continuing denial of visitation, Wis. Stat. § 48.415(4), *is almost perfunctory in nature, requiring only proof that the order was issued and a year has elapsed. There is no affirmative defense to this ground.* (Emphasis added.)
>
> . . . .
>
> If the jury finds that the current petition was not proven, I would then file a new petition after 2/27/03, pleading the continuing denial of visitation.
>
> . . . .
>
> The requested leave to amend requires only approximately 3 weeks and would not adversely impact the interests of the public in the prompt disposition of cases. *It will, in fact, enhance the interests of the public in the prompt disposition of cases as well as reduce expenses and time to the public by requiring only one day of trial.* (Emphasis added.)

---

[2] P.P. was in a halfway house and did not attend court because his probation agent was not given enough notice to arrange for transportation.

At the continued hearing on January 29, P.P.'s counsel advised the court he explained to P.P. that even if the continuing needs ground could be defeated, the County would file this new continuing denial of visitation ground in less than a month. Counsel indicated P.P. agreed that it made sense to adjourn the trial to concurrently contest both grounds. The trial court adjourned the trial date for cause and placed the trial date outside the one-year marker to accommodate the State's impending amendment to the petition to include an allegation of continuing denial of visitation. *See* Wis. Stat. § 48.415(4).

¶ 84.   On March 3, four days after the one-year anniversary of the trial court's order denying P.P. visitation rights, the County filed an amended petition, which dropped the abandonment charge, retained the allegation that the children were in continuing need of protection and services, and included the "perfunctory" continuing denial of visitation ground. A hearing on the amended petition was continued on March 11, due to the unavailability of an interpreter, and on March 25, again due to the unavailability of an interpreter and because P.P. had been taken into custody by Immigration and Naturalization Services.

¶ 85.   On April 16, P.P.'s attorney denied the amended petition's allegations and requested a jury trial. The court set a trial date for June 4. The County represented it would be proceeding only on the continuing denial of visitation and placement because it was the "swiftest." On June 2, P.P. pled no contest to the continuing denial of visitation ground. Just over one week later, the court terminated P.P.'s parental rights.

## II

¶ 86. The United States Supreme Court has frequently emphasized the importance of family. The rights to conceive and to raise one's children have been deemed "essential." *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923). The private interest of a parent in his or her children undeniably warrants deference and, absent a powerful countervailing interest, protection. *Stanley v. Illinois,* 405 U.S. 645, 651 (1972). A parent's fundamental right to the care and custody of his or her child may not be terminated absent a finding the parent is unfit. *Id.* at 649. The real question presented in this case is whether a parent can have his or her parental rights terminated in the absence of an individualized determination of unfitness through the operation of a statutory scheme that works much like a statutory presumption by the way it defines unfitness.

¶ 87. As P.P. points out, Wis. Stat. § 48.415(4) permits a finding of unfitness to be grounded on showing first that a court order denying visitation or physical placement has been issued and, second, that such order has been in effect for at least one year without modification permitting visitation or physical placement.[3] Wisconsin Stat. § 48.424(4), however, states that

---

[3] Wisconsin Stat. § 48.415(4) provides:

Continuing denial of periods of physical placement or visitation, which shall be established by proving all of the following:

(a) That the parent has been denied periods of physical placement by court order in an action affecting the family or has been denied visitation under an order under s. 48.345, 48.363, 48.365, 938.345, 938.363 or 938.365 containing the notice required by s. 48.356 (2) or 938.356 (2).

(b) That at least one year has elapsed since the order denying periods of physical placement or visitation was issued and the

if grounds for termination of parental rights are found by a court order or jury, the court *shall* find the parent unfit.[4] Thus, Wis. Stat. § 48.415(4) not only permits a finding of unfitness upon showing the elements in the statute, it requires a finding of unfitness. This looks like a mandatory irrebuttable presumption to me.[5]

¶ 88. The problem with this statutory scheme is that the grounds for denying visitation or placement are not based on the unfitness of the parent, but are instead based upon the best interests of the child. No finding or evidence of unfitness is required for these visitation decisions. This becomes important because there may be reasons the court did not modify the order denying placement and visitation, including serious illness, temporary incarceration or involuntary absence from the jurisdiction, or a judge's illness or death, that have little or nothing to do with the unfitness of a parent. *See Steven V. v. Kelley H.*, 2004 WI 47, ¶ 56, ¶¶ 96–97, 271 Wis. 2d 1, 678 N.W.2d 856 (Abrahamson, J. concurring) and (Prosser, J. dissenting).

¶ 89. Wisconsin Stat. § 48.13 provides the grounds that need to be established to show that a child is in need of protection or services. Again, the court views these grounds with the focus on the best interest of the child. Assessing parental unfitness is irrelevant.

court has not subsequently modified its order so as to permit periods of physical placement or visitation.

[4] Wisconsin Stat. § 48.424(4) reads, "If grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit. . . ."

[5] Indeed, just last term, this court in *Steven V. v. Kelley H.*, 2004 WI 47, ¶ 39, 271 Wis. 2d 1, 678 N.W.2d 856, concluded that a continuing denial of visitation can be "conclusively" determined "from certain existing court orders that satisfy the statutory requirements."

Wisconsin Stat. § 48.13(8) and (9)[6] may involve issues of a parent's unfitness, but on the other hand they may not.[7] The long and the short of it is that a parent may ultimately be found to be unfit even though the parent's reasons for losing visitation and/or placement of one's child has nothing to do with whether that parent is unfit. All that need be shown is that a parent lost placement or visitation and failed to meet the conditions necessary for reinstating that placement or visitation.

¶ 90. *Stanley,* however, requires an individualized proof of a parent's unfitness "in a particular case." *Stanley,* 405 U.S. at 652. The Court was concerned with the statutory scheme that was based upon a presumption that an unwed parent was an unfit parent. The Court noted that procedure by presumption is always cheaper and easier than an individualized determination. *Id.* at 656–57. But when the procedure forecloses the determinative issues of competence and care, when

---

[6] Wisconsin Stat. § 48.13 states as relevant here:

The court has exclusive original jurisdiction over a child alleged to be in need of protection or services which can be ordered by the court, and:

(8) Who is receiving inadequate care during the period of time a parent is missing, incarcerated, hospitalized or institutionalized;

(9) Who is at least age 12, signs the petition requesting jurisdiction under this subsection and is in need of special treatment or care which the parent, guardian or legal custodian is unwilling, neglecting, unable or needs assistance to provide.

[7] In *State v. Gregory L.S.,* 2002 WI App 101, ¶ 3, 253 Wis. 2d 563, 643 N.W.2d 890, the court of appeals held that "[w]here there is clear and convincing evidence to support a CHIPS petition, a court can properly enter a CHIPS order. Although one parent may be fit, there are times when the facts support a CHIPS order that can protect the best interests of the child."

it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. *Id.* at 657. The Court indicated that while the establishment of prompt efficacious procedures will achieve legitimate state ends as a proper state interest worthy of cognizance in constitutional adjudication, the Court also recognized higher values than speed and efficiency. As the Court stated:

> Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones.

*Id.* at 656.

¶ 91. What is particularly troubling in this case is that P.P. was scheduled to have his hearing on unfitness based on grounds of abandonment, continuing need of protection or need of services, and failure to assume parental responsibility. Dane County filed those petitions on August 12, 2002. After nearly five months of adjournments, on January 27, 2003, the County moved to continue the trial in order to take advantage of Wis. Stat. § 48.415(4), noting that there was "no affirmative defense" to this ground. The County was allowed to circumvent any hearing on the merits of unfitness that were alleged in the August 12, 2002, petitions. As the County conceded, it was much easier and much more convenient, indeed much more efficient, for the County to proceed in this fashion. The County had its ground without having to proceed with any evidence of unfitness that was alleged in the original petition. It no longer had to show abandonment, no longer had to

show a failure to assume parental responsibility, and no longer had to show continuing need of protection or services. This is the very approach that the Court in *Stanley* held unconstitutional.[8]

¶ 92. The ramifications of the majority opinion in this case cannot be understated. A child may be taken away from a parent, in the best interests of the child and for reasons that have nothing to do with the unfitness of that parent. Conditions for return of the child can be ordered by the court, which simply cannot be met for reasons having nothing to do with the unfitness of the parent. At the expiration of one year, a parent may have his or her parental rights terminated absent any particularized showing of unfitness, simply because he or she cannot satisfy the conditions set by the trial court.[9] By simply waiting, the County no longer has to establish on a case-by-case basis that each

[8] Even more troubling is that one of the conditions set forth in the October 31, 2002, order which revised and extended a prior dispositional order, required that each parent not be incarcerated. Will this now become an independent ground to terminate the rights of parents convicted of felonies with sentences in excess of a year? While the majority is correct that a trial court can modify an order that each parent not be incarcerated for persons convicted of felonies and sentenced to an excess of one year, majority op., ¶ 31 n.11, there is no requirement for a trial court to grant such a modification.

[9] The majority suggests that Wis. Stat. § 48.415(4) is not facially invalid because there is still an as-applied substantive due process challenge to the statutory scheme so that reasons for failing to modify the order denying visitation or physical placement may be explored, in a proper case. Majority op., ¶ 25. The majority indicates that had P.P. chosen to raise a defense to the ground at issue here, he may have put himself in a position to raise an as-applied challenge in this case. Majority op., ¶ 25 n.6.

parent who is in jeopardy of having his or her parental rights terminated is unfit. The County only needs to allow the statutory time period to run, and then rush in with an amended petition to terminate parental rights. *Stanley* requires more than efficiency for efficiency's sake. *Stanley* requires an individualized determination of the unfitness of the parent.

### III

¶ 93. Access and an opportunity to be heard: These are fundamental principles upon which our judicial system is based. Few rights can be deemed as fundamental as the right to raise one's children. P.P. has not had access to the courts concerning his fundamental right to parent his children. He has not had an individualized determination of his unfitness as a parent. When his children are removed from him, he is entitled to at least that much. If he is unfit, his parental rights will appropriately be terminated. He has not been afforded the proper determination. Accordingly, I respectfully dissent.

---

Besides shifting the burden to P.P. to show that he is a fit parent, the majority also fails to acknowledge that there is no such defense to the ground at issue in this case. One year had elapsed from the order denying physical placement and visitation and he had not satisfied the conditions. Notwithstanding the fact that a large part of the delay was caused by the County, P.P. simply had no defense to the ground that he had failed to ameliorate the conditions set forth within the time period required, as no such defense can possibly exist once the year has run. Saying that one can raise a defense when no such defense can possibly exist is an exercise in futility. Moreover, it is unreasonable to suggest that his acknowledgement that no such defense can exist should be construed as waiver in light of his initial request for a jury trial and his immediate appeal of the trial court's order terminating his parental rights.

¶ 94.   I am authorized to state that Chief Justice
SHIRLEY S. ABRAHAMSON joins this dissent.