COURT OF APPEALS
DECISION
DATED AND FILED

**November 3, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.    2022AP1249**
**2022AP1250**
**2022AP1251**
**2022AP1252**

Cir. Ct. Nos.  2021TP5
2021TP6
2021TP7
2021TP8

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT IV**

---

NO. **2022AP1249**

IN THE INTEREST OF R.Z., A PERSON UNDER THE AGE OF 18:

PORTAGE COUNTY DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

C. Z.,

RESPONDENT-APPELLANT,

S. Z.,

RESPONDENT.

---

## No. 2022AP1250

IN THE INTEREST OF R.Z., A PERSON UNDER THE AGE OF 18:

PORTAGE COUNTY DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

C. Z.,

    RESPONDENT-APPELLANT,

S. Z.,

    RESPONDENT.

## No. 2022AP1251

IN THE INTEREST OF C.Z., JR., A PERSON UNDER
THE AGE OF 18:

PORTAGE COUNTY DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

C. Z.,

    RESPONDENT-APPELLANT,

S. Z.,

    RESPONDENT.

NO. 2022AP1252

IN THE INTEREST OF J.Z., A PERSON UNDER THE AGE OF 18:

PORTAGE COUNTY DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

 PETITIONER-RESPONDENT,

 V.

C. Z.,

 RESPONDENT-APPELLANT,

S. Z.,

 RESPONDENT.

---

 APPEALS from orders of the circuit court for Portage County: ROBERT J. SHANNON, Judge. *Affirmed*.

 ¶1 BLANCHARD, P.J.[1] C.Z. appeals the circuit court's orders terminating his parental rights to the four children named in the caption on the petition for terminations filed by the Portage County Department of Health and Human Services (the County). C.Z. challenges the circuit court's grant of summary judgment in favor of the County finding C.Z. unfit as a parent under WIS. STAT. § 48.415(4), *i.e.*, on the ground that an earlier circuit order denied

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

 These appeals were consolidated for briefing and disposition by an August 30, 2022 order pursuant to WIS. STAT. RULE 809.10(3).

visitation to C.Z. for each of the children and that more than a year had passed without the order being modified to permit visitation. He specifically contends that he submitted an affidavit to the circuit court that raised a genuine issue of material fact as to whether § 48.415(4) is unconstitutional as applied to him. C.Z. also argues that the court erroneously exercised its discretion during the dispositional phrase, in terminating C.Z.'s parental rights, by failing to properly apply various factors relevant to the best interests of the children under WIS. STAT. § 48.426(3). I reject C.Z.'s arguments and affirm.

## BACKGROUND

¶2      In July 2021, the County petitioned for the termination of C.Z.'s parental rights to the children and also petitioned for termination of the parental rights of the children's mother, S.Z. As to each child, for each parent, the County alleged the existence of two grounds: that there was a continuing need of protection or services under WIS. STAT. § 48.415(2), and that there was a continuing denial of visitation under § 48.415(4).[2] The latter ground was based on

---

[2] The sole ground for termination of parental rights that is pertinent to this appeal, WIS. STAT. § 48.415(4), provides:

> **(4)** CONTINUING DENIAL OF PERIODS OF PHYSICAL PLACEMENT OR VISITATION. Continuing denial of periods of physical placement or visitation, which shall be established by proving all of the following:

> **(a)** That the parent has been denied periods of physical placement by court order in an action affecting the family or has been denied visitation under an order under[, pertinent here, WIS. STAT. §] 48.363 … containing the notice required by [WIS. STAT. §] 48.356(2) ….

(continued)

4

circuit court orders entered as part of child in need of protective services ("CHIPS") proceedings for each child, which were held in 2019 and 2020.

¶3     Also in July 2021, the County filed a motion for summary judgment that the County had established that C.Z. was unfit under the denial of visitation ground in WIS. STAT. § 48.415(4).  As described in the discussion below, C.Z. and S.Z. filed affidavits in response to the County's motion.  The circuit court granted the motion for summary judgment.  Based on this ruling, the consolidated cases proceeded to the dispositional phase.

¶4     The circuit court held a dispositional hearing in April 2022.  A social worker who was assigned to the children during the CHIPS proceedings testified to topics that included the development of each child during their out-of-home placements and their prospects for adoptions in the event of the termination of parental rights.  At the conclusion of the hearing, the court ordered C.Z.'s parental rights to each child terminated.  C.Z. appeals.

## DISCUSSION

¶5     After providing pertinent standards of review, I explain why I reach the merits of C.Z.'s argument that the circuit court erred in granting summary judgment regarding his parental fitness despite the failure of either C.Z. or S.Z. to

---

(b) That at least one year has elapsed since the order denying periods of physical placement or visitation was issued and the court has not subsequently modified its order so as to permit periods of physical placement or visitation.

*See also* § 48.363 ("Revision of dispositional orders").

raise it before the circuit court. Then I address the merits of both issues raised by C.Z. in this appeal.

¶6     Involuntary termination of parental rights cases follow a "two-part statutory procedure." *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. Pertinent here, "[i]n the first, or 'grounds' phase of the proceeding, the petitioner must prove by clear and convincing evidence that one or more of the statutorily enumerated grounds for termination of parental rights exist." *Id.*; WIS. STAT. § 48.31(1). Our supreme court has held that in some circumstances the grounds phase can be disposed of through summary judgment, under the standards established in WIS. STAT. § 802.08. *Steven V.*, 271 Wis. 2d 1, ¶¶4-5, 37-39. I review the grant of summary judgment de novo. *See Oneida Cnty. Dep't of Social Servs. v. Nicole W.*, 2007 WI 30, ¶8, 299 Wis. 2d 637, 728 N.W.2d 652. "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing § 802.08(2)).

¶7     On the merits, C.Z. challenges the constitutionality of a statute, which is an issue of law. *See State v. McGuire*, 2010 WI 91, ¶25, 328 Wis. 2d 289, 786 N.W.2d 227.

¶8     In the second, "dispositional phase, the court is called upon to decide whether it is in the best interest of the child that the parent's rights be permanently extinguished." *Steven V.*, 271 Wis. 2d 1, ¶27 (citing WIS. STAT. § 48.426(2)). I review the circuit court's disposition of a termination of parental rights case for an erroneous exercise of discretion. *See Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). "The [circuit] court properly exercises its

6

discretion when it examines the relevant facts, applies a proper standard of law and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach." *Id.*

## I. Potential Forfeiture

¶9 Neither party raises the topic of forfeiting an argument based on the failure to raise it in the circuit court. But the record appears to reflect that C.Z. makes his summary judgment argument for the first time on appeal. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 (arguments not preserved in the circuit court generally not considered on appeal, which can include even alleged constitutional errors); *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶17, 273 Wis. 2d 76, 681 N.W.2d 190 (forfeiture of unpreserved arguments can be disregarded and merits addressed "in exceptional cases"). I now explain why I decline to apply the forfeiture rule against C.Z.

¶10 The following is additional pertinent background. The County brought its motion for summary judgment simultaneously with its commencement of this action in July 2021. As part of the motion, the County submitted the affidavits of the social worker assigned to work with the children, which included the following averments:

- In October 2019, as part of underlying CHIPS proceedings for the children, the circuit court entered dispositional orders placing the children outside of C.Z.'s home.

- On May 22, 2020, the court granted the County's request to revise the dispositional orders to deny C.Z. visitation with the children and setting "conditions and services for [the parents] to comply with" before they could "resume visitation."

- The May 2020 order denying visitation remained the order of the court as of the time of the County's filing in this action, and the order had not been modified to allow visitation. That is, more than a year had passed since the order denying visitation had been issued without its being modified to allow visitation.

Attached to the affidavits were copies of the pertinent circuit court orders, including the conditions that C.Z. would have to satisfy before he would be permitted renewed visitation with the children.

¶11 Both C.Z. and S.Z. submitted affidavits in response to the County's motion. S.Z. averred that she had "made a good faith effort to comply with the conditions set forth in the order of May 22, 2020, but failure of the [County's] personnel to provide proper assistance was the cause of such failure." C.Z.'s affidavit made several averments that could be reasonably construed to allege that: (1) he complied with certain conditions of reinstating visitation (*e.g.*, that he "attended therapy"); (2) before potential grounds for the termination of parental rights had arisen, County personnel had already committed themselves to the pre-determined outcome that the children should be adopted into new families (*e.g.*, the social worker allegedly told C.Z. that "she was not going to give the kids back"); and relatedly, (3) C.Z. was at times unable to reach County personnel by phone or reach the children for scheduled phone calls. C.Z. also averred that he "asked" his attorney "to go back into court to get [C.Z.'s] visits back" but that the attorney "did not do that."

¶12 As summarized by the circuit court pertinent to this appeal, viewing some of these averments in the light most favorable to C.Z. the averments "would seem to raise … factual issues" regarding whether C.Z. "made good faith efforts to comply with the conditions imposed in the [o]rder denying placement or visitation

8

but [he was] stymied from doing so by the Department." However, the circuit court expressed the view that it was prohibited under *Steven V.* from inquiring into how the requirements of WIS. STAT. § 48.415(4)(b) had been met—that is, inquiring into the reasons C.Z. had been unable to obtain modifications of the orders denying visitation. *See Steven V.*, 271 Wis. 2d 1, ¶48 n.8 ("denial of physical placement and visitation by court order for more than one year pursuant to … § 48.415(4)[ ]does not provide for a defense based upon a parent's explanation for noncompliance with the court order"); *see also id.*, ¶37 (Some grounds for the termination of parental rights, including the denial of visitation under § 48.415(4), "are expressly provable by official documentary evidence, such as court orders.").

¶13   Notably, so far as I can glean from the record, none of the parties brought to the circuit court's attention a supreme court decision post-dating *Steven V.*, namely, *Dane Cnty. DHS v. P.P.*, 2005 WI 32, 279 Wis. 2d 169, 694 N.W.2d 344. This is despite the fact that *P.P.* is the exclusive authority on which C.Z. now relies to make his argument that the summary judgment decision should be reversed. S.Z.'s brief in opposition to summary judgment asserted that there was a factual dispute as to whether the parents had completed the conditions for the reinstatement of visitation and that delay in the completion of those conditions "was caused by the direct failure of [the County's] personnel to properly assist" S.Z. However, S.Z.'s brief did not cite *P.P.* or any other law. C.Z.'s brief in opposition to summary judgment stated in part that C.Z. "is unable to raise a genuine issue of fact to defeat a motion for summary judgment in relation to [WIS. STAT. §] 48.415(4)"—presumably consistent with the language quoted above from *Steven V.* Yet, confusingly, C.Z. also submitted his affidavit as a purported basis

9

for the circuit court to determine "the propriety of summary judgment in this case"—seemingly contrary to these statements in *Steven V.*

¶14     The failure to bring *P.P.* to the circuit court's attention is significant. That decision explicitly clarified that "neither *Steven V.*, nor th[e] decision [in *P.P.*], forecloses the possibility of an as-applied substantive due process challenge to [WIS. STAT.] § 48.415(4) in the future." *See P.P.*, 279 Wis. 2d 169, ¶25 n.6. Thus, the supreme court declined to adopt the position that *Steven V.* stands for "the proposition that there 'is no defense to § 48.415(4) based on [a] parent's explanation for noncompliance with the order." *See P.P.*, 279 Wis. 2d 169, ¶25 n.6 (quoting party brief).

¶15     Whether to disregard C.Z.'s apparent forfeiture may present a close issue. The following supports applying the forfeiture rule. C.Z. should have been aware that this issue was not raised with sufficient clarity before the circuit court, yet he does not acknowledge the forfeiture issue and attempt to explain why forfeiture should not be applied. *See Milwaukee County v. Mary F.-R.*, 2013 WI 92, ¶¶31-32, 351 Wis. 2d 273, 839 N.W.2d 581 (noting that as-applied constitutional challenges to a statute may be forfeited). Thus, he does not argue that this would be an appropriate case for this court to exercise its discretion to disregard the forfeiture.

¶16     Moreover, C.Z. does not argue that his counsel was ineffective in failing to bring an argument based on *P.P.* (though such argument itself might not be preserved due to his failure to raise it in the circuit court to allow for factual development). *See A.S. v. State*, 168 Wis. 2d 995, 1004, 485 N.W.2d 52 (1992) (parents in termination of parental rights proceedings have right to effective

10

assistance of counsel); *State v. Counihan*, 2020 WI 12, ¶28, 390 Wis. 2d 172, 938 N.W.2d 530 ("Generally, if a claim is forfeited, we address that claim in the context of ineffective assistance of counsel"; "the defendant must demonstrate that counsel's failure to object constituted deficient performance and that such deficient performance prejudiced the defendant.").

¶17 Despite these considerations, however, I conclude that the following counsels against applying the forfeiture rule here. *See Mikrut*, 273 Wis. 2d 76, ¶17 (forfeiture rule is one of "judicial administration" and "reviewing court has inherent authority to disregard" the rule). First, the County does not argue on appeal that I should reject C.Z.'s argument based on forfeiture and instead argues for affirmance based exclusively on the merits. For example, the County does not argue that, had C.Z. applied *P.P.* to his averments in the circuit court, it would have prompted the County to present additional factual information. *See Murphy v. Columbus McKinnon Corp.*, 2021 WI App 61, ¶17, 399 Wis. 2d 18, 963 N.W.2d 837 (application of the forfeiture rule in summary judgment context "is appropriate where, had the argument been raised in the circuit court, it might have prompted rebuttal with factual information") (citing *Umansky v. ABC Ins. Co.*, 2008 WI App 101, ¶61, 313 Wis. 2d 445, 756 N.W.2d 601, *aff'd and remanded*, 2009 WI 82, 319 Wis. 2d 622, 769 N.W.2d 1).

¶18 More generally, this court has the discretion to consider issues not preserved in the circuit court when "the issue raised is a legal question, the parties have thoroughly briefed the issue, and there are no disputed issues of fact." *Estate of Miller v. Storey*, 2017 WI 99, ¶67, 378 Wis. 2d 358, 903 N.W.2d 759. Here, the interrelated issues of whether summary judgment was appropriate and whether WIS. STAT. § 48.415(4) is unconstitutional as applied to C.Z. are exclusively legal

issues. *See supra* ¶¶6-7 (summarizing legal standards). And, the facts are not disputed in the sense that, in reviewing a motion for summary judgment, the court resolves all genuine issues of fact, and considers all reasonable inferences arising from the evidence submitted, in favor of the nonmovant, here C.Z. *See **Affordable Erecting, Inc. v. Neosho Trompler, Inc.***, 2006 WI 67, ¶19, 291 Wis. 2d 259, 715 N.W.2d 620.

## II. Summary Judgment Regarding Denial Of Visitation

¶19 C.Z. argues that the circuit court erred in granting summary judgment in favor of the County during the grounds phase because there were "[g]enuine issues of material fact … as to whether it was impossible or completely unreasonable for C.Z. to comply with the order denying placement or visitation." I reject this argument as undeveloped.

¶20 C.Z. primarily points to Justice Prosser's concurrence in ***P.P.*** for the proposition that, in the words of the Justice, whether "it was impossible or completely unreasonable to comply with the court order" denying visitation is a material fact that could preclude summary judgment based on WIS. STAT. § 48.415(4). *See **P.P.***, 279 Wis. 2d 169, ¶60 (Prosser, J., concurring). But, of course, the concurring opinion of one Justice is not binding precedent.

¶21 As for the majority opinion in ***P.P.***, C.Z.'s initial brief merely notes that the opinion leaves open the possibility for a successful as-applied substantive due process challenge to WIS. STAT. § 48.415(4) when a challenger "explore[s]" "the reasons for [the court] failing to modify the order denying visitation or physical placement." *See **P.P.***, 279 Wis. 2d 169, ¶25. On reply, C.Z. adds only the following point: unlike the parent in ***P.P.***, who "relinquished his right to test

the validity of the order that denied him visitation and periods of physical placement" by pleading no contest at the grounds phase, C.Z. at least nominally opposed the County's motion for summary judgment.[3]  *See id.*  At no point does C.Z. address the reasoning in *P.P.* regarding how § 48.415(4) facially complies with the requirements of substantive due process—put differently, what allows the statute to have at least some constitutional applications.  *See P.P.*, 279 Wis. 2d 169, ¶¶26, 32 (§ 48.415(4) is "narrowly tailored to advance the State's compelling interest of protecting children against unfit parents" despite the lack of a specific finding of unfitness, because each predicate step to § 48.415(4) considers a parent's fitness).  That is, he makes no attempt to show how, as applied to the particular facts of this case, § 48.415(4) is not narrowly tailored to the compelling interest of protecting the children from unfit parents.

¶22  More broadly, regardless of which opinion of the various justices in *P.P.* that C.Z. might attempt to rely on, he fails to apply a point of law stated by any justice to specific evidence in, or inferences reasonably arising from, the summary judgment record here.  Instead, C.Z. narrowly focuses on the circuit court's brief remarks regarding the parents' averments and the court's interpretation of *Steven V.* in the absence of any party bringing *P.P.* to the court's attention.  But my review is de novo and, once a prima facie case is made by the

---

[3] Consistent with my conclusion not to apply forfeiture to this issue, I assume without deciding that C.Z.'s affidavit meaningfully distinguishes the situation here from the situation in *Dane Cnty. DHS v. P.P.*, 2005 WI 32, 279 Wis. 2d 169, 694 N.W.2d 344, in which the parent entered a plea of no contest.  I make this assumption despite the fact that C.Z.'s summary judgment brief in the circuit court appeared to concede that there were no genuine issues of material fact.

movant, a nonmoving party cannot defeat summary judgment without showing the existence of a genuine issue of material fact under the applicable legal standards.

¶23    In the absence of a developed argument to a disputed fact regarding an as-applied substantive due process challenge, C.Z. does not dispute the County's argument that the summary judgment record supports a straightforward application of WIS. STAT. § 48.415(4).  The undisputed averments of the social worker along with the attached circuit court orders, noted above, meet all necessary requirements.  In May 2020, the circuit court in the CHIPS cases issued revised disposition orders under WIS. STAT. § 48.363 that denied C.Z. visitation to each child and these orders contained notices under WIS. STAT. § 48.356(2).  *See* § 48.415(4)(a).  By the time the County petitioned for the termination of parental rights in July 2021, more than one year had passed without the CHIPS orders being modified to permit visitation.  *See* § 48.415(4)(b).  Accordingly, I affirm summary judgment on the unfitness ground established by the County.

**III.  Best Interests Of The Children In Disposition**

¶24    C.Z. argues that the circuit court erroneously exercised its discretion in terminating his parental rights by failing to properly consider the mandatory factors listed in WIS. STAT. § 48.426(3).  More specifically, he contends that the court failed to meaningfully consider the following factors:  the ages of the children, both at the time of their disposition and the time of their removal from the home under § 48.426(3)(b); and whether the children have substantial relationships with each other, and whether it would harmful to sever those relationships under § 48.426(3)(c).  He further argues that the court could not have meaningfully addressed the likelihood of the children to be adopted after

termination or their ability to enter more stable and permanent family relationships because there was no testimony at the disposition hearing from the families proposing to adopt. *See* § 48.426(3)(a), (f). I provide additional pertinent legal standards before addressing C.Z.'s arguments, providing additional background pertinent to each factor as needed.

¶25 The "prevailing factor" in determining whether to terminate parental rights in the disposition phase is "the best interests of the child." WIS. STAT. § 48.426(2). As part of this determination, § 48.426(3) provides:

> In considering the best interests of the child under this section the court shall consider but not be limited to the following:
>
> **(a)** The likelihood of the child's adoption after termination.
>
> **(b)** The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> **(c)** Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> **(d)** The wishes of the child.
>
> **(e)** The duration of the separation of the parent from the child.
>
> **(f)** Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

"The court should explain the basis for its disposition, on the record, by alluding specifically to the [above] factors … and any other factors that it relies upon in reaching its decision." ***Sheboygan Cnty. DH&HS v. Julie A.B.***, 2002 WI 95, ¶30,

255 Wis. 2d 170, 648 N.W.2d 402; *see also* **State v. Margaret H.**, 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475 ("the record should reflect adequate consideration of and weight to each factor").

### A. Ages Of The Children

¶26    Regarding the ages of the children, I agree with the County that the following discussion demonstrates that the court weighed this factor as required by statute:

> [A]re the children of sufficient age and health at the time of disposition for adoption?  Well, adoptions take place, in this Court's experience, at all different ages of a child's minority and/or of course many times the ideal, one would think, would be at ages one or two or shortly after birth; however, in my experience in doing this over the years, if adoption takes place at all ages, including all the way up to ages 17, I have seen[,] and children … want[,] permanency. They desire[,] and it's an innate need, … to seek out some stability and permanency in their lives.

The court further noted that, due to an earlier separation from 2012 to 2015, the children had all "spent significant periods of time, depending upon their age," separated from their parents, "some of them [for] half their life or better."

¶27    This discussion is sufficient to meet the court's obligations to specifically take into account and weigh the children's ages as related to their best interests.  The court clearly demonstrated that it was aware of the children's ages and weighed this and other factors in applying WIS. STAT. § 48.426(3)(b).[4]

---

[4] C.Z. argues in his initial brief that the children's ages were not alluded to during the disposition hearing, but makes no reply after the County notes that in fact there was testimony regarding the children's ages during their placement out of the home in 2019, which concedes the
(continued)

16

## B. Children's Substantial Relationships With Each Other

¶28 Related to C.Z.'s argument about consideration of the children's ages, he contends that the court gave insufficient consideration to the children's relationships with one another, given the substantial portions of the siblings' lives that they have spent residing with their parents in the same home. *See* WIS. STAT. § 48.426(3)(c) (court shall consider whether each child "has substantial relationships with … other family members, and whether it would be harmful to the child to sever these relationships"). The County does not dispute that the children have substantial relationships with one another. Instead, as with the age factor, the County points to portions of the court's reasoning that demonstrate its consideration of the children's relationships with one another.

¶29 The circuit court found that the County "has consistently tried to have all four children have visitation with one another" that had been "biweekly" and "regularly." The court further noted the testimony of the social worker that "the pre-adoptive homes are all in agreement" that it would be necessary for the children "to continue to know each other, to see each other, and be a part of each other's lives," which the court considered "important." The court observed that there had been previous attempts to place at least some of the children together but that for reasons reflected in "court records" those efforts "ha[d] not been

point. *United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (lack of response may be taken as a concession).

Separately, I reject a possible argument by C.Z. that would be based on the circuit court purportedly demonstrating insufficient consideration of the health of the children, as required under WIS. STAT. § 48.426(3)(b). I reject this possible argument because C.Z. makes this point for the first time on reply. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

17

successful." The court also explained that, for these same reasons reflected in the record, the children were being adopted into separate homes.

¶30 This discussion by the circuit court reflects that it considered the effects that terminating C.Z.'s (as well as S.Z.'s) parental rights would have on the children's sibling relationships.

¶31 In his reply brief, C.Z. contends that the court's discussion of continuing visits among the children insufficiently accounted for the possibility that prospective adoptive families will not maintain visits among the siblings, particularly in the absence of testimony from the prospective adoptive parents themselves. But this amounts to an unstated assertion that the circuit court clearly erred in making the finding regarding the "agreement" of the pre-adoptive parents to hold sibling visits, which would need to be developed as a supported argument to have merit. *See **Gerald O.***, 203 Wis. 2d at 152-53 ("The [circuit] court's findings of fact will not be set aside unless clearly erroneous."). Similarly, C.Z. does not support the contention that the court was required to give weight to hypotheticals, going beyond the evidence actually before the court. Moreover, C.Z.'s argument on this point suffers from some of the additional problems I discuss below regarding his focus on the lack of testimony from prospective adoptive parents more generally.

## C. Absence Of Direct Testimony By Prospective Adoptive Families

¶32 C.Z. argues "that no reasonable judge could properly come to the conclusion that termination was in the best interest of the children given that there was no evidence introduced by and through any proposed adoptive resource for each child." He contends that the mandatory factors in WIS. STAT. § 48.426(3)(a)

18

and (f)—the likelihood of adoption and ability to enter more stable and more permanent family relationships after termination—"urged, if not compelled such testimony." The implied argument is that it was insufficient for the circuit court to rely on the testimony of a social worker regarding these factors for each child. C.Z. notes that the social worker's testimony was not corroborated by expert testimony (or relatedly, bonding assessments or family studies), and further asserts that the "documentary evidence," consisting mainly of reports prepared by the social worker, did not offer insights into the nature and circumstances of the prospective adoptive families.

¶33 The circuit court found, based on the social worker's testimony and her reports regarding the potential adoption status of each of the four children, that the children were all likely to be adopted. Also based on the social worker's testimony, the court found that each of the four children would be able to enter more stable and permanent relationships as a result of the termination of parental rights.

¶34 C.Z.'s argument based on the absence of direct testimony by prospective adoptive families fails for at least the following reasons.

¶35 First, C.Z. fails to identify and address the standards pertinent to the circuit court's findings and credibility determinations based on the evidence that was before the court.

¶36 Second, C.Z. does not provide legal authority supporting the proposition that the County was required to present direct testimony from the

19

prospective adoptive families or the other kinds of evidence to which he now points.[5]

¶37    Third, C.Z. fails to meaningfully reply after the County makes a supported argument that the circuit court's findings were reasonable in light of identified portions of the social worker's testimony regarding each child's development during his or her out-of-home placements. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578.

¶38    Fourth, in contrast to C.Z.'s summary judgment argument focusing on legal issues, C.Z.'s argument about the lack of "first-hand" testimony implicates potential issues regarding how the circuit court as factfinder weighed the social worker's testimony.  These issues should have been raised and addressed in the circuit court, but it appears from the record that they were not raised.  *See Counihan*, 390 Wis. 2d 172, ¶26 ("The purpose of the forfeiture rule is to enable the circuit court to avoid or correct any error as it comes up, with minimal disruption of the judicial process and maximum efficiency.").

## CONCLUSION

¶39    For all of these reasons, I affirm the orders of the circuit court terminating C.Z.'s parental rights to the above-named children.

---

[5] C.Z. briefly references a lack of "personal, first-hand account of any adoptive resource's desire or commitment to adopt of the children."  But he does not develop a supported argument that other evidence in the record could not support equivalent reasonable inferences as would have been provided in first-hand accounts.  Notably, C.Z. does not develop an argument that the circuit court clearly erred in finding the following:  three of the children were in foster homes in which the foster parents "ha[d] already started taking the steps necessary in order to be an adoption option" and the fourth child had shown in other placements that she was "an appropriate person to be adopted."

*By the Court*.—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.