# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 16, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal Nos.** **2023AP1229** | Cir. Ct. Nos.  **2020TP2** |
| **2023AP1230** | **2020TP3** |
| **2023AP1231** | **2020TP4** |
| **2023AP1232** | **2020TP5** |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |
| | **DISTRICT IV** |

NO. 2023AP1229

IN RE THE TERMINATION OF PARENTAL RIGHTS TO N.H.,
A PERSON UNDER THE AGE OF 18:

JACKSON COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

R.H.H.,

   RESPONDENT-APPELLANT.

**No. 2023AP1230**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.R.H.,
A PERSON UNDER THE AGE OF 18:**

**JACKSON COUNTY DEPARTMENT OF HUMAN SERVICES,**

    **PETITIONER-RESPONDENT,**

  **V.**

**R.H.H.,**

    **RESPONDENT-APPELLANT.**

---

**No. 2023AP1231**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.H.H.,
A PERSON UNDER THE AGE OF 18:**

**JACKSON COUNTY DEPARTMENT OF HUMAN SERVICES,**

    **PETITIONER-RESPONDENT,**

  **V.**

**R.H.H.,**

    **RESPONDENT-APPELLANT.**

---

**No. 2023AP1232**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.R.M.K.,
A PERSON UNDER THE AGE OF 18:**

**JACKSON COUNTY DEPARTMENT OF HUMAN SERVICES,**

    **PETITIONER-RESPONDENT,**

  **V.**

**R.H.H.,**

    **RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Jackson County: TODD W. BJERKE, Judge. *Affirmed*.

¶1 GRAHAM, J.[1] This is a consolidated appeal of circuit court orders that terminated R.H.H.'s parental rights to four children. On appeal, R.H.H. argues that the court erroneously granted partial summary judgment in favor of the Jackson County Department of Human Services (the "Department") at the grounds phase of the proceedings, and that the court erred when it admitted a 2013 psychological report during the dispositional phase of the proceedings. I reject both arguments and affirm.

## BACKGROUND

¶2 In 2010, the Department removed R.H.H.'s four children, N.H., A.R.H., M.H.H., and M.R.M.K., from their mother's home and placed them in foster care. The Department commenced child in need of protection and services (CHIPS) proceedings on behalf of the children, who were between the ages of two months and four years old. In support of the CHIPS petitions, the Department alleged that the children's mother was unable to meet their needs, and that R.H.H. was unavailable to care for them because he was confined in prison with an unknown release date.

¶3 By dispositional orders issued in February 2011, the CHIPS court found that the children were at risk of neglect, ordered that the children remain in

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

foster placement, and set conditions that each parent would be required to meet before the children could be returned to that parent's home.

¶4      In September 2011, R.H.H. was charged with repeated sexual assault of a child (the "Ashland County case").[2]  R.H.H. was convicted in the Ashland County case and, as a result of the conviction, he was sentenced to a 30-year prison term and ordered to have no contact with anyone under the age of 17.

¶5      In 2013, the Department asked the CHIPS court to revise the dispositional orders to prevent contact between R.H.H. and the children.  In support of its motion, the Department introduced reports by Dr. Stephen Dal Cerro, a psychologist who opined that R.H.H. should not have custody of the children due to his history of "child sexual victimization and interpersonal violence coupled with career criminality, personality pathology and parenting deficits."  The CHIPS court granted the Department's request and suspended all contact between R.H.H. and the children.  Then in 2016, the CHIPS court again revised the dispositional orders, this time setting new conditions for return, including that R.H.H. "complete intensive, high-risk sex offender treatment" and "complete domestic violence programming."

¶6      R.H.H's conviction in the Ashland County case was vacated in 2016 pursuant to a federal habeas corpus proceeding.  The Ashland County case was ultimately resolved when R.H.H. pled no contest to a felony charge of causing mental harm to a child.

---

[2] The victim in the Ashland County case was not biologically related to R.H.H. and is not one of the children at issue in this appeal.

¶7    R.H.H. was released from prison in 2017 but, within months of his release, he was arrested based on a new criminal charge of first-degree sexual assault of a different child (the "Dane County case"). R.H.H. was convicted of sexual assault in the Dane County case and remains in prison for that crime. According to his briefing in this appeal, he currently "has an active direct appeal challenging the conviction" in the Dane County case.

¶8    Meanwhile, in 2017, the Department filed termination of parental rights (TPR) petitions which sought orders terminating R.H.H.'s parental rights to the four children, and the circuit court ultimately granted that relief. However, on appeal, the TPR orders were reversed due to the Department's failure to show that the CHIPS dispositional orders upon which the TPR petitions were based contained statutorily required written notices. *See **Jackson Cnty. DHHS v. R.H.H., Jr.***, Nos. 2018AP2440, 2018AP2441, 2018AP2442, 2018AP2443, unpublished slip op. (WI App. April 4, 2019).

¶9    In October 2019, the CHIPS court issued new dispositional orders, which undisputedly contain the appropriate statutory notices. The October 2019 dispositional orders again set return conditions, including conditions that required R.H.H. to complete sex offender treatment and domestic violence programming before having any contact with the children. It is undisputed for the purposes of this appeal that R.H.H. never completed sex offender treatment or domestic violence programming.

¶10 The Department filed new TPR petitions in 2020.[3] Among other grounds for termination, the Department alleged continuing denial of periods of physical placement or visitation under WIS. STAT. § 48.415(4) ("continuing denial"). Generally speaking, to prove the continuing denial ground, a petitioner must show that the parent has been denied placement or visitation by an order containing statutory termination of parental rights warnings, and that at least one year has passed since that order was issued without the court subsequently modifying its order to permit periods of placement or visitation. *See* § 48.415(4); ***Dane Cnty. DHS v. P.P.***, 2005 WI 32, ¶26, 279 Wis. 2d 169, 694 N.W.2d 344.[4]

---

[3] Involuntary termination of parental rights cases follow a "two-part statutory procedure." ***Steven V. v. Kelley H.***, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. "In the first, or 'grounds' phase," the Department must prove that "one or more of the statutorily enumerated grounds for termination of parental rights exist." *Id.*; WIS. STAT. § 48.31(1). If the Department proves that grounds exist, "the court shall find the parent unfit." WIS. STAT. § 48.424(4). The court then proceeds to the second, or "dispositional" phase, in which it decides whether it is in the best interests of the child that the parent's rights be terminated. ***Steven V.***, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2).

[4] More specifically, in ***Dane County DHS v. P.P.***, 2005 WI 32, ¶26, 279 Wis. 2d 169, 694 N.W.2d 344, our supreme court identified five steps that must occur before a parent can be found unfit under the continuing denial statute:

> (1) [T]here is an initial decision to hold a child in governmental custody; (2) if the child is held in custody, then there must be a factual determination that the child is in need of protection or services …; (3) if a child is found in need of protection or services, then the decision about whether to place the child outside the parental home is made; (4) if the child is placed outside the home, only after finding that parent-child visitation or physical placement would be harmful to the child may a parent be denied visitation and physical placement; and (5) if an order denying visitation and physical placement is entered, it must contain conditions that when met will permit the parent to request a revision of the order to afford visitation or periods of physical placement.

6

¶11 The Department moved for partial summary judgment on the continuing denial ground. In support of its motion, the Department submitted affidavits to prove its allegations, and it argued that there was no genuine dispute that R.H.H. had been denied placement and visitation by the October 2019 dispositional orders; that these orders contained the requisite TPR warnings; and that over a year had passed since these orders had been issued, and they had not been modified to permit placement or visitation.

¶12 In his response, R.H.H. did not dispute any of the facts that the Department presented in support of its partial summary judgment motion. He instead argued that there was a material dispute about whether a finding of unfitness on the continuing denial ground would violate his due process rights because, R.H.H. contended, the dispositional orders placed him in an "impossible situation." R.H.H. asserted that his conviction in the Dane County case was "on appeal," and that complying with the condition requiring sex offender treatment "could jeopardize his appeal." R.H.H. also asserted that the condition requiring domestic violence programming was "baffling" because he has "no history of domestic violence." R.H.H. did not submit an affidavit or any other evidentiary materials in opposition to partial summary judgment; the only evidentiary material cited in his response was R.H.H.'s own deposition testimony that sex offender treatment "would take away my constitutional right to an appeal" in the Dane County case and that domestic violence programming is "not something that I need whatsoever."[5]

---

[5] This excerpt from the transcript of R.H.H.'s deposition had been introduced by the Department in its own affidavit supporting partial summary judgment.

7

¶13    R.H.H.'s trial counsel elaborated on this argument during the hearing on the Department's summary judgment motion. According to counsel, "it is known that one must," under Wisconsin Department of Correction rules, "admit to any sex offenses" as part of sex offender treatment; therefore, to complete the program, R.H.H. would have to "admit[] to something that's [on] appeal." Trial counsel did not cite any material in the record, nor to any other authority, in support of these representations.

¶14    The circuit court rejected R.H.H.'s due process argument and granted the Department's motion for partial summary judgment. Among other things, the court observed that, by failing to present his concerns about the "impossibility" of complying with the dispositional orders to the CHIPS court, R.H.H. "did not pursue the due process rights he had available to him." The court also noted the lack of evidentiary support for R.H.H.'s argument, observing that "[t]here is no evidence in the record that [R.H.H.] must admit or acknowledge any element in the Dane County conviction in order that he receive [sex offender treatment]." Finally, the court determined that "[t]here has been no demonstrated progress by" R.H.H. toward meeting the sex offender treatment condition or other return conditions, observing that, for example, "[c]ompliance with the domestic violence programming would have nothing to do with [R.H.H.'s] appeal, yet he diagnosed himself as not needing that program and did not participate in that program."

¶15    Having established that grounds for termination existed, the circuit court found R.H.H. to be unfit and moved on to the dispositional phase of the proceeding. During the dispositional hearing, the Department presented testimony from Dr. Dal Cerro, who, as noted above, had evaluated R.H.H. in 2013 and

authored psychological reports recommending that R.H.H. have no contact with the children. The court received Dal Cerro's 2013 reports into evidence over R.H.H.'s objection.

¶16    The circuit court determined that it was in the children's best interests to terminate R.H.H.'s parental rights and issued orders doing so. R.H.H. appeals.

## DISCUSSION

¶17    As noted, R.H.H. argues that the circuit court erred at the grounds phase by granting partial summary judgment on the continuing denial ground, and at the dispositional phase by admitting one of Dr. Dal Cerro's reports. I address these arguments in turn.

### I. Grounds Phase

¶18    In his argument regarding the grounds phase, R.H.H. challenges the constitutionality of WIS. STAT. § 48.415(4), the continuing denial ground for termination, as applied against him on partial summary judgment. R.H.H. argues that, under the circumstances, application of the continuing denial statute violated his substantive due process rights.

¶19    "Substantive due process rights are rooted in the Fourteenth Amendment of the United States Constitution, and Article I, Sections 1 and 8 of the Wisconsin Constitution." *Kenosha Cnty. DHHS v. Jodie W.*, 2006 WI 93, ¶39, 293 Wis. 2d 530, 716 N.W.2d 845. "The right of substantive due process protects against a state act that is arbitrary, wrong or oppressive, regardless of whether the procedures applied to implement the action were fair." *Id.* (quoting

*P.P.*, 279 Wis. 2d 169, ¶19). In *Jodie W.*, our supreme court determined that a parent's substantive due process rights were violated in a TPR proceeding when the TPR court found the parent unfit based on her failure to meet "an impossible condition of return, without consideration of any other relevant facts and circumstances particular to the parent." *Jodie W.*, 293 Wis. 2d 530, ¶56.

¶20 As I understand his argument, R.H.H. contends that at least one of the conditions of return in the October 2019 dispositional orders put him in an "impossible position" because fulfilling it would jeopardize his appeal in the Dane County case. R.H.H. represents that, to fulfill the return condition requiring him to complete a sex offender treatment program, R.H.H. would have to admit to committing sexual offenses; however, he has maintained his innocence of the charge in the Dane County case, and the admission required to complete the treatment program would jeopardize his chances of prevailing on appeal.[6] R.H.H. argues that, as in *Jodie W.*, the continuing denial statute pursuant to which the circuit court found him unfit is unconstitutional as applied in these circumstances, and the court erroneously granted summary judgment on that ground.

¶21 As explained below, R.H.H.'s argument fails for at least two independent reasons. As a procedural matter, R.H.H. failed to identify any

---

[6] R.H.H. does not specifically explain how an admission to having committed sexual offenses would jeopardize his appeal in the Dane County case. Presumably, R.H.H.'s reasoning is that his admission could be used against him in postconviction proceedings or if his judgment of conviction is reversed and the case remanded for a new trial. However, R.H.H. fails to make this (or any other theory about the legal effect of an admission) clear in his briefing. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (arguments must be supported by legal reasoning, rather than "general statements"). I nevertheless assume for purposes of this appeal that the admission purportedly required to complete sex offender treatment would, in fact, jeopardize R.H.H.'s appeal.

evidence in the summary judgment record to show that he was required to admit to sexual offenses as part of a sex offender treatment program, and he therefore failed to create a genuine dispute of material fact. And as a substantive matter, even if R.H.H. had presented such evidence, R.H.H.'s argument would nevertheless have failed because *Jodie W.* does not apply where, as here, the circuit court's finding of unfitness is not based solely on an impossible return condition.

## A. Evidentiary Showing

¶22 The statutory summary judgment procedure generally applies to TPR proceedings, and partial summary judgment may be granted at the grounds phase. *See Steven V.*, 271 Wis. 2d 1, ¶¶32, 44. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶23 I review a circuit court's grant of summary judgment de novo, "applying the same methodology as the circuit court but benefiting from the circuit court's analysis." *State v. Bobby G.*, 2007 WI 77, ¶36, 301 Wis. 2d 531, 734 N.W.2d 81. In evaluating a motion for summary judgment, a court first "examine[s] the moving party's submissions to determine whether they establish a prima facie case for summary judgment." *Estate of Oaks v. Stouff*, 2020 WI App 29, ¶11, 392 Wis. 2d 352, 944 N.W.2d 611. If the moving party makes such a showing, the court then "examine[s] the opposing party's affidavits to determine whether a genuine issue exists as to any material fact." *Id.*

¶24     R.H.H. does not contest that the Department has made a prima facie case that he is unfit based on the continuing denial statute; he instead argues that the statute cannot be constitutionally applied to his situation.[7]   In an as-applied challenge, the burden is on the challenger to "prove that the challenged statute has been applied in an unconstitutional manner beyond a reasonable doubt." *State v. Roundtree*, 2021 WI 1, ¶17, 395 Wis. 2d 94, 952 N.W.2d 765.   "[T]o survive summary judgment, the party with the burden of proof on an element in the case must establish that there is at least a genuine issue of fact on that element by submitting evidentiary material 'set[ting] forth specific facts,' pertinent to that element …." *Dahm v. City of Milwaukee*, 2005 WI App 258, ¶4, 288 Wis. 2d 637, 707 N.W.2d 922 (citations omitted) (quoting WIS. STAT. § 802.08(3)).

¶25     Here, R.H.H.'s constitutional challenge depends on the factual premise that, in order to complete sex offender treatment, he must admit to having committed sexual offenses.   To survive partial summary judgment, he must therefore identify evidentiary material in the summary judgment record sufficient

---

[7] "There are two major types of constitutional challenges:  facial and as-applied." *State v. Roundtree*, 2021 WI 1, ¶17, 395 Wis. 2d 94, 952 N.W.2d 765.  In a facial challenge, the challenger "must show that the law cannot be constitutionally enforced under any circumstances," *id.*, ¶17, but in an as-applied challenge, "the court assesses the merits of the challenge by considering the facts of the particular case before it," *id.*, ¶8.

to show that there is "at least a genuine issue of fact" as to this factual premise.[8] R.H.H. identifies no such evidentiary material.

¶26    R.H.H. refers to a statement he made at his deposition, in which he described sex offender treatment as something that "would take away my constitutional right to an appeal."   However, this vague statement does not constitute evidence that sex offender treatment requires any admission—it is merely R.H.H.'s own legal conclusion about his constitutional rights, without reference to any facts that would support that conclusion.   Thus, it is not admissible evidence that can be used to defeat summary judgment.  *See **Hopper v. City of Madison***, 79 Wis. 2d 120, 130, 256 N.W.2d 139 (1977) (averments "made by persons who do not have personal knowledge or which contain allegations of ultimate facts, conclusions of law or anything other than evidentiary facts do not meet the [summary judgment] requirements and will be disregarded").

¶27    R.H.H. also relies on the assertion by his trial counsel that "it is known" that a person must admit to sex offenses to complete sex offender treatment.  However, counsel's statement does not constitute evidence.  R.H.H.'s

---

[8] This court has considered the evidentiary showing required by a parent attempting to defeat summary judgment in this same context.  *See **Dane Cnty. DHS v. Evelin O.-L.***, Nos. 2011AP1168, 2011AP1169, 2011AP1170, 2011AP1171, 2011AP1243, 2011AP1244 2011AP1245, 2011AP1246, 2011AP1247, unpublished slip op. (WI App Aug. 11, 2011).  The ***Evelin O.-L.*** opinion can be cited for persuasive value under our rules of procedure, WIS. STAT. RULE 809.23(3), and I find it to be persuasive.  In ***Evelin O.-L.***, the parents sought to avoid partial summary judgment by arguing that the continuing denial statute was unconstitutional as applied to them because the dispositional order set "impossible" return conditions.  *Id.*, ¶6.  As the ***Evelin O.-L.*** court explained, "to avoid partial summary judgment under [WIS. STAT.] § 48.415(4)," the parents needed to show, among other things, "that there is a reasonable inference from the facts in the record that one or more conditions were impossible to meet …."  *Id.*, ¶19.

counsel did not represent that he had any personal knowledge of sex offender treatment requirements, and instead stated vaguely that such requirements are "known." But even if counsel did have personal knowledge, such representations by counsel are not evidence. *See* ***Merco Distrib. Corp. v. O & R Engines, Inc.***, 71 Wis. 2d 792, 795-96, 239 N.W.2d 97 (1976) ("Arguments or statements made by counsel during argument are not to be considered or given weight as evidence."). An attorney cannot manufacture a factual dispute by making assertions during a summary judgment hearing that are unsupported by the record.

¶28 Finally, R.H.H. contends that the circuit court "agreed with [R.H.H.]'s argument that an admission was necessary to successfully complete sex offender treatment." R.H.H. cites an exchange between his trial counsel and the court at the dispositional hearing, which occurred weeks after the summary judgment hearing. In this exchange, which occurred during argument on an evidentiary objection, R.H.H.'s trial counsel represented that "an admission is necessary to complete sex offender treatment," and the court responded, "That's to complete it. He could have started it. I've had plenty of offenders that have started sex offender treatment and can't get to that stage …."

¶29 R.H.H.'s reliance on this statement by the circuit court is misplaced for at least two reasons. First, the court made this statement at the dispositional hearing, weeks after summary judgment had already been granted. The dispositional hearing transcript was not, and could not have been, part of the summary judgment record, and R.H.H. cannot rely on statements made at that hearing to defeat a well-supported motion for summary judgment. Second, R.H.H. cites no law for the proposition that a statement by the circuit court judge can be used as evidence to defeat summary judgment. Generally, such statements cannot

14

be evidence, because "[t]he judge presiding at the trial may not testify in that trial as a witness." WIS. STAT. § 906.05; *see also* **State v. Anson**, 2005 WI 96, ¶33, 282 Wis. 2d 629, 698 N.W.2d 776 (a court "may not rely on its own personal observations of events not contained in the record," because in so doing it is "essentially acting as a witness in the case").

¶30    In sum, R.H.H. has pointed to no evidentiary material in the summary judgment record that would create a genuine dispute of material fact.  As the circuit court noted in its summary judgment decision, "[t]here is no evidence in the [summary judgment] record that [R.H.H.] must admit or acknowledge any element in the Dane County conviction in order that he receive [sex offender treatment]."[9]    Therefore, R.H.H. has failed to make the evidentiary showing required to survive partial summary judgment.

### B.  *Jodie W.*

¶31    It may not be especially surprising that R.H.H.'s trial counsel did not attempt to support R.H.H.'s constitutional argument with admissible evidence; even if supported, the argument would nevertheless have failed.  R.H.H.'s argument relies on our supreme court's reasoning in *Jodie W.* regarding "impossible" return conditions.  However, as explained below, the holding from *Jodie W.* is inapplicable in situations like this, in which the finding of unfitness

---

[9] R.H.H. also fails to identify any evidentiary material in the record supporting an even more fundamental premise underlying his argument:  that he has appealed or otherwise challenged the Dane County conviction.  However, the Department and the circuit court appear to have accepted this premise, and I do not further address this issue.

was based on the parent's failure to meet multiple conditions and there is no argument that it was based solely on an impossible condition.

¶32  *Jodie W.* involved CHIPS and then TPR proceedings against a mother who was incarcerated. *Jodie W.*, 293 Wis. 2d 530, ¶¶4, 8. In that case, the county health department initiated the CHIPS proceeding and the child was placed in a foster home because the mother's incarceration rendered her unable to care for her child. *Id.*, ¶¶4-5. The CHIPS court entered a dispositional order setting several return conditions, including a condition that the mother maintain a "suitable residence" for her child. *Id.*, ¶7. The department later filed a TPR petition, alleging the mother was unfit due to the child's continuing need of protection or services under WIS. STAT. § 48.415(2) ("continuing CHIPS"). To prove the continuing CHIPS ground, a petitioner must generally show, among other things, that the child has been placed outside the home pursuant to a court order and that, despite reasonable efforts to provide services to the parent, the parent has failed to meet return conditions. *See* § 48.415(2).

¶33  The circuit court found the mother unfit under the continuing CHIPS statute based solely on the fact that, as an incarcerated person, she was unable to provide a suitable residence for her child. *Jodie W.*, 293 Wis. 2d 530, ¶52. In making the unfitness finding, the court did not consider other evidence, including evidence that the mother had completed or made significant progress toward the other attainable return conditions. *Id.*, ¶¶52-54 & n.23. Our supreme court reversed, concluding that the continuing CHIPS statute was unconstitutional as applied to the mother's circumstances. *Id.*, ¶56. As the *Jodie W.* court explained, the unmet return condition "was impossible" for the mother to meet due to her incarceration, *id.*, ¶47, and the circuit court violated the mother's substantive due

process rights by finding her "unfit solely by virtue of her status as an incarcerated person without regard for her actual parenting activities or the condition of her child," *id.*, ¶55.

¶34    There are several significant distinctions between the instant case and *Jodie W.*, and these distinctions call into question the extent to which the reasoning from *Jodie W.* applies here. As one example, *Jodie W.* involved an as-applied constitutional challenge to a different statutory ground for unfitness (continuing CHIPS under WIS. STAT. § 48.415(2), rather than continuing denial under § 48.415(4)). R.H.H. cites no case in which *Jodie W.*'s reasoning has been extended to a constitutional challenge to the continuing denial statute, or to any other statutory ground for unfitness. As another example, the CHIPS court in *Jodie W.* set a return condition that appeared to have been impossible on its face—under most circumstances, it is evident that a parent will be unable to maintain a suitable home for their child while incarcerated.  Here, by contrast, the requirement to complete sex offender treatment is not impossible on its face. Rather, R.H.H. contends that it was impossible for a reason that is not obvious, and is unique to his situation—that it would require him to make an admission that would jeopardize his appeal in a separate criminal case. And R.H.H. identifies no evidence in the record showing that he ever informed the CHIPS court or the Department that he did not believe he could complete this return condition, or

17

even that he believed that the condition would have negative implications for his appeal.[10]

¶35    However, I need not and do not examine the potential significance of these or other distinctions.  Rather, I assume without deciding that, as R.H.H. contends, it was impossible for him to complete sex offender treatment, and also that the reasoning in *Jodie W.* could apply here, despite any differences between the applicable statutory grounds for the unfitness findings.  I will also set aside any question of whether R.H.H. forfeited his argument by failing to inform the CHIPS court or the Department that he believed that it was impossible for him to complete sex offender treatment.  *See State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (forfeiture is the failure to timely assert a right).  I need not address these issues because this court has already concluded that *Jodie W.* does not govern situations where, as here, a finding of unfitness is not based solely on an impossible return condition, but is also based on failure to meet other conditions that were attainable.  *See Waukesha Cnty. DHHS v. Teodoro E.*, 2008 WI App 16, ¶24, 307 Wis. 2d 372, 745 N.W.2d 701.

¶36    In *Teodoro E.*, the dispositional order issued by the CHIPS court required the father to complete return conditions, including regular visits with the children, which were impossible to complete because the father had been deported and could not re-enter the country.  *Teodoro E.*, 307 Wis. 2d 372, ¶¶5, 22.  In the

---

[10] R.H.H. contends that the Department was required to "tailor the conditions" of the October 2019 dispositional order to his "particular needs," and that the Department instead "set[] up [R.H.H.] to fail."  The implication of this argument appears to be that the Department intentionally set a return condition it knew was impossible for R.H.H. to complete; yet, as noted above, R.H.H. identifies no facts in the record that would support such an accusation.

ensuing TPR proceeding, the circuit court found the father unfit under the continuing CHIPS ground based on his failure to meet multiple return conditions. *Id.*, ¶21.

¶37 On appeal, the father argued that, as in *Jodie W.*, the finding of unfitness violated his due process rights because it was based on an impossible return condition. *Id.*, ¶¶20-23. In rejecting that argument, we noted that the father "remained free to work on and meet many of the conditions of return" while he was out of the country—such as communicating with the child's doctors and teachers and regularly paying child support—but the circuit court had found that he failed to do so. *Id.*, ¶23. We concluded that the finding of unfitness was "not based solely on impossible conditions," and *Jodie W.* therefore did not "govern this case." *Id.*

¶38 R.H.H. makes the same argument that we rejected in *Teodoro E.* Like the father in that case, R.H.H. was not found unfit based "solely" on a purportedly impossible condition. Instead, among other conditions, the October 2019 dispositional order also requires R.H.H. to complete a domestic violence program. R.H.H. does not argue that this condition was impossible to complete; rather, by his own admission, he chose not to participate because he unilaterally determined that a domestic violence program would not benefit him.[11] Nor does

---

[11] In the summary judgment response that R.H.H. filed in the circuit court, he asserted that compliance with the domestic violence programming condition would be "unattainable," or at least that he would be "possibly unable to complete" domestic violence programming, because "he's not admitting to something he didn't do." However, R.H.H. has not identified any record support for the assertion that domestic violence programming would, in fact, require an admission that he committed domestic violence, and he appears to have abandoned this assertion on appeal.

R.H.H. dispute that he failed to complete or even work toward other attainable return conditions, including conditions requiring him to "[a]cknowledge and demonstrate an understanding of the effect [that] his incarceration has on his children." The circuit court considered R.H.H.'s failure to meet these attainable conditions, observing that R.H.H. made "no demonstrated progress … toward meeting the CHIPS court[-]ordered conditions that impacted his contact, visitation, and placement with his children."[12] This is in stark contrast to the mother in *Jodie W.*, who, despite her incarceration, worked diligently on the return conditions she was able to complete. *See Jodie W.*, 293 Wis. 2d 530, ¶54 & n.23. We concluded in *Teodoro E.* that the father's substantive due process argument failed under such circumstances, and R.H.H. identifies nothing in the summary judgment record that would lead to a different result in this case.

¶39 Accordingly, R.H.H. has failed to show that there is any genuine dispute of material fact that would prevent partial summary judgment on the continuing denial ground for termination.[13]

---

[12] More specifically, in its summary judgment order, the circuit court stated that "[t]here is no evidence in the record that [R.H.H.] acknowledged and demonstrated an understanding of the effects that his crimes have had on his children." As to another condition of return, which requires R.H.H. to complete "criminal thinking programming," the court noted that, although R.H.H.'s trial counsel represented that R.H.H. had completed this condition, "no evidence has been provided to document completion of that programming." In this appeal, R.H.H. does not identify any record evidence showing that he completed or took any steps toward completing either of these return conditions.

[13] At times in the briefing, R.H.H. broadly argues that summary judgment was inappropriate because "there are genuine issues of material fact that could have been presented at a jury trial." But the sole factual question that R.H.H. clearly identifies is the condition that is addressed at length in the body of this opinion—"whether the [sex offender treatment] condition was possible for [R.H.H.] to meet." As explained above, even assuming that this condition was "impossible" to meet, the constitutional argument still fails. Therefore, R.H.H. has not identified any issue of material fact that needed to be decided by a jury.

## II. Dispositional Phase

¶40    I now turn to the argument that the circuit court erred by admitting Dr. Dal Cerro's 2013 psychological evaluation at the dispositional hearing.  At the dispositional phase of a TPR proceeding, the circuit court considers whether termination of parental rights is in the best interests of the child, guided by the factors set forth in WIS. STAT. § 48.426.  *Sheboygan Cnty. HHS v. Julie A.B.*, 2002 WI 95, ¶¶29, 37, 255 Wis. 2d 170, 648 N.W.2d 402.

¶41    With limited exceptions that are inapplicable here, "neither common law nor statutory rules of evidence are binding" at a dispositional hearing.  WIS. STAT. § 48.299(4)(b).  Nevertheless, "[t]he court shall apply the basic principles of relevancy, materiality, and probative value to proof of all questions of fact," and "shall exclude immaterial, irrelevant, or unduly repetitious testimony."  *Id.* Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  WIS. STAT. § 904.01.

¶42    "The admissibility of evidence is directed to the sound discretion of the [circuit] court, and [an appellate court] will not reverse the [circuit] court's decision to allow the admission of evidence if there is a reasonable basis for the decision and it was made 'in accordance with accepted legal standards and in accordance with the facts of record.'"  *State v. Brewer*, 195 Wis. 2d 295, 305, 536 N.W.2d 406 (Ct. App. 1995) (quoting *State v. Whitaker*, 167 Wis. 2d 247, 252, 481 N.W.2d 649 (Ct. App. 1992)).

¶43    Multiple witnesses testified at the dispositional hearing in R.H.H.'s case, including Dal Cerro.  As previously stated, Dal Cerro is a psychologist who

had evaluated R.H.H. in 2013, shortly after R.H.H. was convicted in the Ashland County case. Over R.H.H.'s relevance objection, the circuit court admitted into evidence two reports that Dal Cerro prepared in 2013. R.H.H. contends that the court erred by admitting one of these reports, which is a psychological evaluation of R.H.H.[14]

¶44 The evaluation presents biographical background about R.H.H. and his extensive criminal history, including but not limited to his conviction in the Ashland County case. The evaluation notes that R.H.H. "has lived an exclusively criminal lifestyle," has been convicted for offenses that include theft, burglary, forgery, and battery, and has been "incarcerated or under community supervision for the majority of his life, beginning in his early teens."

¶45 The evaluation also presents the allegations of abuse that formed the basis of the charge in the Ashland County case. It references the victim's videotaped interview, in which she alleged repeated acts of forced sexual intercourse and other physical abuse that began when she was five or six years old. The evaluation notes that R.H.H. believed he would prevail in an appeal of the Ashland County conviction, but dismisses this belief as "likely unrealistic." As mentioned, the conviction in that case was, in fact, later vacated, and the case was resolved when R.H.H. pled to a lesser felony following a remand.

---

[14] R.H.H. does not expressly identify which of the two Dal Cerro reports he means to challenge. The only report referenced in R.H.H.'s briefing by its record citation is the 2013 psychological evaluation, and my analysis addresses the content of that report. To the extent R.H.H. intends to challenge the admission of Dal Cerro's other report, I reject any such argument because it lacks citation to the record. *See Lechner v. Scharrer*, 145 Wis. 2d 667, 429 N.W.2d 491 (Ct. App. 1988) (I need not consider arguments that are not supported by references to the record).

¶46    The evaluation diagnoses R.H.H. with "Antisocial Personality Disorder (psychopathic)," noting that he exhibits a "high level of psychopathy" and scored "at the 98th percentile" on a psychopathy measure "in comparison to a sample of male prison inmates." According to the evaluation, psychopaths "show impairment in their ability to form long-lasting bonds to people, principles, or goals," "are lacking in empathy, anxiety, and genuine guilt and remorse," and are predisposed to "criminality, substance abuse, and a failure to fulfill social obligations and responsibilities." The evaluation also states that R.H.H. "appears to meet the criteria for Pedophilia," and notes that "the combination of sexual deviance and psychopathy has been empirically associated with the greatest risk for sexual re[]offending."[15]

¶47    The evaluation recommends against permitting contact between R.H.H. and his children, opining that, "[i]f exposed to [R.H.H.] in any meaningful fashion, his antisocial behaviors, beliefs, and attitudes would pose a psychological risk to the children, in terms of modeling and influence."

¶48    On its face, the evaluation appears to be directly relevant to whether termination of R.H.H.'s parental rights would be in the children's best interests. As just one example, information about R.H.H.'s potential negative impact on his children is relevant in determining whether severing R.H.H.'s ties to the children

---

[15] R.H.H. appears to call into question the pedophilia diagnosis, citing Dal Cerro's dispositional hearing testimony that it had been "technically inappropriate" to diagnose R.H.H. with pedophilia in 2013 because, at that time, there was "only … one established episode of pedophilia." However, Dal Cerro also testified that he nevertheless stood by this diagnosis, which was supported by R.H.H.'s subsequent conviction in Dane County for sexual assault of a second child.

would be harmful to them, which is one of the enumerated best interest factors. *See* WIS. STAT. § 48.426(c).

¶49    R.H.H. appears to make two arguments challenging the relevance of the 2013 evaluation. He argues that: (1) the evaluation was made "in reliance on a conviction that would later be reversed"; and (2) "the passage of time and the dramatic change in circumstances" since 2013 "makes the doctor's assessments obsolete." These arguments are unavailing.

¶50    It is overstatement to contend, as R.H.H. does, that the evaluation was made "in reliance" on the vacated Ashland County conviction. Much of the information in the evaluation (including R.H.H.'s prior criminal history and his psychopathy diagnosis) does not relate in any direct way to the Ashland County case. And, to the extent that the allegations underlying the Ashland County case informed his evaluation, Dal Cerro explained during the dispositional hearing that he did not base his assessments on the existence or absence of a criminal conviction, but rather on the "behavior as reported by the victim and collaterals." Dal Cerro testified that he had extensive professional experience considering victims' reports of sexual assault and, based on this experience, he believed in 2013—and still believed at the time of the dispositional hearing—that the allegations were true. R.H.H. was free to call this belief into question based on the fact that the conviction had been vacated, and his trial counsel did so during the dispositional hearing. But the fact that Dal Cerro's belief can be challenged does not render irrelevant any of his assessments based on that belief.

¶51    Nor does R.H.H. persuade me that the passage of time has rendered the evaluation "obsolete." At the dispositional hearing, Dal Cerro testified that

24

psychopathy is "a very stable condition" and "there is no evidence that the condition changes for the better" over time. R.H.H. points to the fact that the children are now ten years older, arguing that "[c]ommon sense dictates that a child under six has different emotional and intellectual capabilities than a teen." However, R.H.H. does not identify any specific information in the evaluation that would be any less important—let alone rendered completely irrelevant—based on the children's current ages.

¶52 Accordingly, the record shows a reasonable basis for the circuit court's determination that the evaluation was relevant, and R.H.H. has not shown that the court erroneously exercised its discretion in admitting it.

## CONCLUSION

¶53 For all of these reasons, I affirm the circuit court orders that terminated R.H.H.'s parental rights to N.H., A.R.H., M.H.H., and M.R.M.K.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.